## SANCHICK *v.* STATE BOARD OF OPTOMETRY.

1. STATUTES—CONSTRUCTION.

An act must be read in its entirety and construed in the light of its objectives.

2. SAME—CONSTRUCTION.

Words in a statute will be given their usual and customary meanings, save as otherwise defined, and in seeking meaning when construing a statute, words and clauses will not be divorced from context, thus carrying out the intention of the legislature.

3. PHYSICIANS AND SURGEONS—OPTOMETRY—WORDS AND PHRASES—GROSSLY.

The word "grossly," as used in phrase "grossly unprofessional, unethical and dishonest conduct of a character likely to deceive the public," in act regulating optometry, introduces no new or different charge but relates solely to the matter of degree (CL 1948, § 338.254).

4. SAME—OPTOMETRY—WORDS AND PHRASES—OF A CHARACTER LIKELY TO DECEIVE THE PUBLIC.

The term "of a character likely to deceive the public," as used

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur, Statutes §§ 303–308.
[2] 50 Am Jur, Statutes § 238.
[5] 41 Am Jur, Physicians and Surgeons § 49.
[7] 41 Am Jur, Physicians and Surgeons § 28.
[9] See, generally, 14 Am Jur, Costs § 37, 91.

in phrase "grossly unprofessional, unethical and dishonest conduct of a character likely to deceive the public," in act regulating optometry, is definite and certain in meaning and sufficiently explicit to inform people as to the conduct which will render optometrists liable to penalties of the act (CL 1948, § 338.254).

5. Same—Optometry—Words and Phrases—Unprofessional and Dishonest Conduct.—Common Knowledge.

The term "unprofessional * * * and dishonest conduct" as used in phrase "grossly unprofessional, unethical and dishonest conduct of a character likely to deceive the public," in act regulating optometry, does not rest upon conduct known to be improper and unprofessional·as a matter of common knowledge, but is defined by statute (CL 1948, § 338.254).

6. Same—Optometry—Words and Phrases—Unethical—Consensus of Expert Opinion.

The term "unethical," as used in· phrase "grossly unprofessional, unethical and dishonest conduct of a character likely to deceive the public," in act regulating optometry, is but the consensus of expert opinion as to what is necessary to guard the public against deception and against practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunities of the least scrupulous and is neither vague nor ill-defined (CL 1948, § 338.254).

7. Same—Optometry—Eye.

The practice of optometry is not merely an incident to a merchandising business but is a real science devoted to the measurement, accommodation and refractory powers of the eye without the use of drugs, a matter of vital interest in the public health as the eye is a delicate organ, closely connected with intellectual, nervous and physical functions (CL 1948, § 338.254).

8. Same — Optometry — Cappers — Steerers — Construction of Statutes.

The words "capper" and "steerer," as used in act regulating optometry and proscribing their use by optometrists, have a commonly-accepted meaning, and the elements of fleecing, swindling or fraud are not necessary factors thereof (CL 1948, § 338.254).

9. Costs—Public Question—Optometry.

No costs are allowed in suit to restrain State board of examiners in optometry from conducting a hearing on a com-

plaint charging plaintiff with unprofessional, unethical and dishonest conduct, a public question being involved (CL 1948, § 338.254).

Appeal from Ingham; McDonald (Archie D.), J., presiding. Submitted April 7, 1955. (Docket No. 48, Calendar No. 46,463.) Decided June 6, 1955. Rehearing denied October 3, 1955.

Bill by Edwin L. Sanchick against the Michigan State Board of Examiners in Optometry and its individual members to enjoin disciplinary action taken because of alleged unprofessional conduct. On motion, bill dismissed. Plaintiff appeals. Affirmed.

*Paul B. Barak* (*Ernest Goodman,* of counsel), for plaintiff.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Maurice M. Moule,* Assistant Attorney General, for defendants.

Smith, J. Plaintiff, a licensed optometrist, filed a bill of complaint in the Ingham county circuit court seeking to enjoin the defendant State board of examiners in optometry from conducting a hearing on a complaint charging plaintiff with unprofessional, unethical and dishonest conduct.

Plaintiff's bill of complaint challenged the sufficiency of the notice of hearing served upon him by the board and the constitutionality of the optometry act (PA 1909, No 71, as amended). A temporary restraining order and an order to show cause issued upon the filing of the bill. The defendant board moved to dismiss on the ground that the bill of complaint did not state a cause of action, that plaintiff had an adequate remedy at law, and that the court was without jurisdiction to enjoin and interfere with the administrative function of the board.

After hearing, the circuit court sustained defendants' motion to dismiss and entered an order dismissing plaintiff's bill of complaint. Plaintiff has appealed from the order of dismissal.

Section 4, Act No 71, PA 1909, as amended (CL 1948, § 338.254[Stat Ann § 14.644]), provides in part:

"The board of examiners in optometry shall refuse to issue the certificate of registration provided for in this act to any person who shall have been guilty of grossly unprofessional, unethical and dishonest conduct of a character likely to deceive the public, and may suspend or revoke such certificate for like reasons.

" 'Unprofessional and dishonest conduct' as used in this act is hereby declared to mean:

"(a) The loaning of his license by any licensed optometrist to any person; the employment of 'cappers' or 'steerers' to obtain business; 'splitting', or dividing a fee with any person or persons; the advertising by any means whatsoever of optometric practice or treatment or advice in which untruthful, improbable, misleading or impossible statements are made."

Appellant urges upon us that the clause "grossly unprofessional, unethical and dishonest conduct of a character likely to deceive the public," as found in the act, is not sufficiently definite to inform appellant of the path he must follow at his peril, and, more particularly, that the word "unethical," as so employed, is vague and undefined and thus offensive to the constitutional due process clauses.* Moreover, asserts appellant, the complaint itself, which charges that appellant employed a "capper" or "steerer" (subparagraph [a], *supra*), merely compounds his confusion, since it lacks specific allegations as to how capping and steering deceives the public, and, in addition, like the statute, employs the allegedly

---

* US Const, Am 14; Mich Const 1908, art 2, § 16.—REPORTER.

vague language describing his conduct as grossly unprofessional, unethical and of a character likely to deceive the public. Finally, he asserts that the complaint does not link capping and steering with swindling, that it thus does not constitute a violation of section 4(a) of the act, and hence that the board of examiners is without jurisdiction to proceed with the hearing.

The act must be read in its entirety and construed in the light of its objectives. Words will be given their usual and customary meanings, save as otherwise defined, and, in seeking meaning, words and clauses will not be divorced from those which precede and those which follow. Our interpretation will thus carry out the intention of the legislature. *Wayne County Board of Road Commissioners v. Wayne County Clerk*, 293 Mich 229. The axis upon which this appeal turns is the expression "grossly unprofessional, unethical and dishonest conduct of a character likely to deceive the public." We will examine it in detail for its adherence to the standard above set forth. Its beginning and its ending will not long detain us. The word "grossly" introduces no new or different charge but relates solely to the matter of degree; and, as to the words "of a character likely to deceive the public," we agree with the New Jersey court (*Abelson's, Inc., v. New Jersey State Board of Optometrists*, 5 NJ 412 [75 A2d 867, 22 ALR2d 929]) that they are words of definite and certain meaning and, as employed in our act, sufficiently explicit to inform our people as to the conduct which will render them liable to its penalties.

Although it is not an inevitable conclusion that the words "unprofessional * * * and dishonest conduct," standing alone, would have lacked the necessary particularity (*e.g., Bell v. Board of Regents of University of the State of New York*, 295 NY 101 [65 NE2d 184, 163 ALR 900]), our legislature has

not seen fit to let the matter rest in the courses of conduct known to be improper and unprofessional as a matter of common knowledge. It has defined unprofessional and dishonest conduct. What, however, of the word "unethical"? Does its added employment render vague and ill-defined what was theretofore precise? Does it import a new and different concept and standard? To answer this inquiry we must inquire into the standards themselves, particularly with respect to the need therefor and the content thereof. It is well recognized that in those professions dealing with human ills and their treatment it is the policy of our people, expressed in many legislative acts, of which the act before us is one, to require of those who would essay such practice conformity with the highest standards of personal and professional competence. With reference to the practice of optometry, it has been well said:

(The work of the optometrist) "bears such intimate relation to the health of mankind as to bring it within the power of legislative supervision through the exercise of the police power. Vision is essential to the highest usefulness of the individual. The eye is proverbially a delicate organ. It is closely connected with intellectual, nervous and physical functions. Advice as to its care and prescribing for the correction of its defects by tests and examinations without the use of drugs is closely connected with health." *Commonwealth* v. *Houtenbrink,* 235 Mass 320, 324 (126 NE 669).

We have expressed similar views. In *Seifert* v. *Buhl Optical Co.,* 276 Mich 692, 697, 698, we held:

"The difficulty with appellant's entire position is its belief that optometry is merely an incident to its corporate merchandising business. It overlooks the fact that optometry has become a real science devoted to the measurement, accommodation and refractory powers of the eye without the use of drugs,

thus superseding obsolete and archaic methods of fitting eye glasses. It has become one of the important professions and for the preparation of its proper practice, courses in optometry, physics, physiology, pathological conditions of the eye, the proper use of the retinascope, ophthalmometer, ophthalmoscope, refractor, prisms, lenses, et cetera, are given as part of the curriculum in many of our largest universities as well as colleges specializing in optometry. The legislatures throughout the entire country have recognized that the proper practice of this profession is of the most vital importance to the public and have made due provisions not only for the licensing of optometrists after proper examination, but for regulating the proper practice of the profession."

In such learned and demanding professions the term "ethics" receives frequent employment. It has not lacked examination in the courts. The supreme court of the United States has spoken with respect thereto as follows:

"We do not doubt the authority of the State to estimate the baleful effects of such methods and to put a stop to them. The legislature was not dealing with traders in commodities, but with the vital interest of public health, and with a profession treating bodily ills and demanding different standards of conduct from those which are traditional in the competition of the market place. The community is concerned with the maintenance of professional standards which will insure not only competency in individual practitioners, but protection against those who would prey upon a public peculiarly susceptible to imposition through alluring promises of physical relief. And the community is concerned in providing safeguards not only against deception, but against practices which would tend to demoralize the profession by forcing its members into an unseemly rivalry which would enlarge the opportunities of the least scrupulous. What is generally called the

'ethics' of the profession is but the consensus of expert opinion as to the necessity of such standards." *Semler* v. *Oregon State Board of Dental Examiners;* 294 US 608, 612 (55 S Ct 570, 79 L ed 1086).

The term came also under the scrutiny of the court in *Pennsylvania State Board of Medical Education and Licensure* v. *Ferry,* 172 Pa Super 372, 378, 379 (94 A2d 121):

"The legislature has not said what conduct constitutes 'grossly unethical practice' but the phrase is akin to the phrase 'unprofessional conduct' and includes, as well stated by Judge Sohn of the court below, 'those breaches of the trust, confidence and reliance, necessarily attendant upon the intimate relationship of physician and patient, which amount to gross abuses of the standards of professional conduct generally recognized as essential to the proper practice of medicine and surgery'—to which we add—and which are within the scope of the purpose of the act and within the limits of the police power. It cannot be doubted that appellant's conduct of aiding and abetting an unlicensed person in the unlawful practice of medicine, manifestly and flagrantly violative of the purpose of the act, was 'grossly unethical practice.' "

It seems clear, then, that the term "unethical" is descriptive of professional standards. It is clear, also, that conduct, such as in the case at bar, which is both unprofessional and dishonest by statutory definition, is unethical by any standard of ethics. The term, as so construed, is neither vague nor ill-defined and the appellant has had fair and adequate warning of the standards he is required to attain and the complaint he is required to meet.

In view of the regulatory problem and the widespread statutory use of such terms as "dishonest," "unprofessional," "unethical," and words of like import, we would not be understood as holding that

their use, with respect to the learned professions, either without conjunctives or without a context of accompanying specific, defined offenses, necessarily imports an unconstitutional vagueness. (See *Bell v. Board of Regents of the University of the State of New York, supra; Sage-Allen Co., Inc.,* v. *Wheeler,* 119 Conn 667 [179 A 195, 98 ALR 897]). The point is not before us and we express no opinion thereon. The short answer to appellant's arguments respecting the use of the words "capper" and "steerer" is that they have a commonly-accepted meaning (*People* v. *Dubin,* 367 Ill 229 [10 NE2d 809]), and the elements of fleecing or swindling or fraud are not necessary factors thereof. We find no merit in appellant's remaining and other contentions.

The order of the lower court is affirmed. No costs, a public question being involved.

CARR, C. J., and BUTZEL, SHARPE, BOYLES, REID, DETHMERS, and KELLY, JJ., concurred.