HERALD COMPANY v CITY OF BAY CITY

Docket No. 111709. Argued April 4, 2000 (Calendar No. 4). Decided
    July 27, 2000.
    In 1996, the editor of The Bay City Times requested the city of Bay
        City, under the Michigan Freedom of Information Act, to provide
        the names, job titles, cities of residence, and ages of the seven final
        candidates for the job of Bay City Fire Chief. The city denied the
        request. After a chief was appointed, Herald Company, owner of
        the Times, brought an action in the Bay Circuit Court, alleging vio-
        lations of the FOIA and the Michigan Open Meetings Act. The court,
        William J. Caprathe, J., granted summary disposition for the defen-
        dant on both claims, holding that the plaintiff's FOIA request was
        defective and, alternatively, that the requested information was
        exempt from disclosure. The court further concluded that the city
        manager and his committee were not subject to OMA provisions,
        and thus that there was no violation of the act. The Court of
        Appeals, FITZGERALD, P.J., and O'CONNELL and WHITBECK, JJ., reversed.
        228 Mich App 268 (1998) (Docket No. 200187). The city appeals.
        In an opinion by Justice YOUNG, joined by Chief Justice WEAVER,
        and Justices CAVANAGH, TAYLOR, CORRIGAN, and MARKMAN, the
        Supreme Court held:
        Bay City violated the FOIA when it refused to disclose public
        records concerning final candidates for the position of fire chief,
        because the requested records were not within any exemption
        under the FOIA. The city manager was neither part of, nor acting as,
        a public body within the contemplation of the OMA, and thus was
        not subject to its requirements.
        1. The Freedom of Information Act provides that all persons are
        entitled to full and complete information regarding the affairs of
        government and the official acts of those who represent them as
        public officials and public employees. Its specific provisions gener-
        ally require full disclosure of public records in the possession of a
        public body. Exemptions are narrowly construed. Inter alia, a pub-
        lic body may exempt from disclosure information of a personal
        nature where the public disclosure of the information would consti-
        tute a clearly unwarranted invasion of privacy.

2. The FOIA does not establish detailed requirements for a valid request. Instead, it merely requires that a request describe the public record sufficiently to enable the public body to find it. In this case, the plaintiff requested the names, current job titles, cities of residence, and ages of the seven final candidates for the job of Bay City Fire Chief, and the city admitted that this description was sufficient to allow it to find documents containing the information. The city argues that the request was flawed because it sought the information itself, rather than documents containing the information. The city also asserted that to satisfy the plaintiff's request, it would have had to create a new public record. However, because the request was sufficient to allow the city to find the requested information, it was valid under MCL 15.233(1); MSA 4.1801(3)(1). The plaintiff did not specify or require disclosure of any document, newly created or otherwise, but simply asked the city for information. Under the FOIA, the city could have satisfied the request by giving the plaintiff access to the public records containing the information, by allowing it to copy the public records containing the information, or by providing the plaintiff with copies of the records. While the request could have been satisfied by the city's creation of a new public record, the plaintiff did not so request, and the fact that the city had no obligation to create a record says nothing about its obligation to satisfy the plaintiff's request in some other manner required by the FOIA.

3. The information sought under the FOIA in this case is not personal, and its revelation would not constitute a clearly unwarranted invasion of privacy. The fact of application for a public job, or the typical background information that may be disclosed with such an application, is simply not personal within the contemplation of the exemption. Given the public nature of the position at issue, it would be difficult to conclude that the customs, mores, and views of the community contemplate that an application for such a position could be made without expectation of considerable public scrutiny. The defendants failed to establish on the record why any of the information requested by the plaintiff is the kind of intimate or embarrassing information that the FOIA exception protects. Even if the requested information was contained in public documents that also referenced embarrassing or intimate personal information, the FOIA imposes on the city a duty to separate the exempt and nonexempt material and make the nonexempt material available for examination and copying.

4. The trial court committed an error of law when it proceeded directly to an inquiry regarding whether disclosure would constitute a clearly unwarranted invasion of privacy without first deter-

mining whether the requested information was of a personal nature. It additionally erred when it concluded that disclosure would have constituted such an invasion. By providing that the invasion of privacy must be clearly unwarranted, the Legislature unmistakably indicated that the intrusion must be more than slight, i.e., very significant. In this case, the requested disclosure would serve the policy underlying the FOIA because it would facilitate the public's access to information regarding the affairs of their city government. Keeping in mind that the defendants bear the burden of proof that an exemption applies, and balancing the public interest against the relatively circumscribed privacy interest protected by the FOIA exemption, it cannot be concluded that the disclosure sought might result in a clearly unwarranted invasion of an individual's privacy.

5. The Open Meetings Act provides that all meetings, decisions, and deliberations of a public body constituting a quorum of its members are to take place at a meeting open to the public. Closed session meetings are strictly limited, and, except as provided in the act, all interviews by a public body for employment or appointment to a public office must be held in an open meeting. As used in the OMA, the term "public body" connotes a collective entity, and the statutory terms used illustratively do not encompass individuals. Thus, an individual executive acting in an executive capacity is not a public body for the purposes of the OMA. Further, such an executive making a recommendation to a deciding body does not constitute a delegation of authority. In this case, the city manager was assigned the task of recommending a new fire chief directly by the city charter, and, therefore, he required no delegation of authority from the city commission in order to perform that function. Under these circumstances, the Legislature, by electing not to include individuals in the OMA definition of public body, has exempted the city manager from its requirements. Because the city manager's committee was not empowered by state constitution, statute, charter, ordinance, resolution, or rule, it was not a public body for purposes of the OMA, and the committee's actions did not violate that statute.

Affirmed in part, reversed in part, and remanded.

Justice KELLY, concurring in part and dissenting in part, stated that the city manager is a public body for purposes of the Open Meetings Act because he was an authority. Under the city charter, he is one of two public bodies that, working together, determine who will be the Bay City Fire Chief. In interviewing candidates and reducing the field of candidates, he made decisions, performed governmental functions, and exercised governmental authority. Thus,

his actions were subject to the OMA and should have been undertaken at a public meeting.

*Braun, Kendrick, Finkbeiner, P.L.C.* (by *Scott C. Strattard*), for the plaintiff-appellee.

*Allsopp, Kolka & Wackerly, P.C.* (by *Mark A. Kolka*), for the defendants-appellants.

Amici Curiae:

*Law Offices of Dawn Phillips-Hertz* (by *Dawn Phillips-Hertz* and *Lisa Rycus Mikalonis*), for Michigan Press Association and The Associated Press and *Kasiborski, Ronayne & Flaska, P.C.* (by *John J. Ronayne, III*), for The Michigan Association of Broadcasters.

*Miller, Canfield, Paddock & Stone, P.L.C.* (by *Don M. Schmidt*), for Michigan Municipal League Legal Defense Fund.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Patrick Burkett* and *C. F. Boyle, Jr.*), for Public Corporation Law Section/State Bar of Michigan.

*Bauckham, Sparks, Rolfe, Lohrstorfer & Thall, P.C.* (by *John H. Bauckham*), for Michigan Townships Association.

YOUNG, J. We granted leave in this case to address the application of the Michigan Freedom of Information Act (FOIA) and the Michigan Open Meetings Act (OMA) in the context of the municipal hiring process. We conclude that Bay City violated the FOIA when it refused to disclose public records concerning final candidates for the position of Bay City Fire Chief, because the requested records were not within any

exemption under the FOIA. We additionally conclude that the city manager in this case was neither part of, nor acting as, a "public body" within the contemplation of the OMA, and thus was not subject to its requirements. Accordingly, we affirm in part and reverse in part the decision of the Court of Appeals and remand this matter to the trial court for proceedings consistent with this opinion.

I. FACTS AND PROCEDURAL BACKGROUND

Plaintiff challenges the process used by defendant Bay City to select a new fire chief. The relevant facts are not in dispute.

In February 1996, the Bay City Fire Chief retired. The Bay City Charter prescribes that a new fire chief must be appointed by the Bay City Commission on the recommendation of the city manager. The city manager at that time, defendant Bruce McCandless, formed a committee to assist him in making his recommendation. The purpose of the committee was to aid McCandless in establishing hiring criteria, soliciting and screening applicants, and interviewing applicants, and to advise him on the selection of the most qualified candidate. The committee consisted of defendants Howard Asch, Thomas Rhine, Boyd Boettger, Bruce Wagner and Jacob Hutter.[1]

The five-member committee received thirty-four applications and recommended that nine of those applicants be considered for the fire chief position. Two of the nine recommended candidates withdrew their applications. The remaining seven applicants

---

[1] Hutter was also a city commissioner.

were interviewed by the committee, and the committee concluded that three of these candidates deserved further consideration. McCandless agreed with the committee's recommendation and personally interviewed the final three candidates. All of the committee's meetings and the interviews were conducted in private.

On May 6, 1996, before McCandless made a recommendation to the city commission, the editor of The Bay City Times[2] filed a Freedom of Information Act request for "the names, current job titles, cities of residence and age of the seven final candidates for the job of Bay City fire chief . . . ." In a letter dated May 13, 1996, the city denied plaintiff's request.

On May 16, 1996, McCandless sent a letter to the city commission recommending one candidate, Gary Mueller, for the fire chief position. At an open meeting on June 3, 1996, the city commission deliberated and voted to appoint Gary Mueller as the Bay City Fire Chief.

After the appointment, plaintiff filed suit alleging violations of the FOIA and the OMA. Plaintiff argued that the FOIA required the city to comply with plaintiff's request for information about the candidates who were interviewed, and that the OMA required McCandless and his committee to conduct interviews in open meetings.

The trial court eventually granted summary disposition for defendants on both the FOIA and OMA claims. The court held that plaintiff's FOIA request was defective and, alternatively, that the requested information

---

[2] The Bay City Times is owned and operated by plaintiff The Herald Company.

was exempt from disclosure. As to the OMA, the trial court concluded that McCandless and his committee were not subject to its provisions, and thus that there was no violation. Plaintiff appealed the grant of summary disposition, and the Court of Appeals reversed on both counts.[3] We granted defendants' application for leave to appeal.[4]

## II. STANDARD OF REVIEW

The trial court granted summary disposition for defendants on the basis of its interpretation of the Freedom of Information Act, MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*, and the Open Meetings Act, MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.* This Court reviews the grant or denial of summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Similarly, we review questions of statutory construction de novo as a question of law. *Donajkowski v Alpena Power Co*, 460 Mich 243, 248; 596 NW2d 574 (1999); *Mager v Dep't of State Police*, 460 Mich 134, 143, n 14; 595 NW2d 142 (1999). Because our judicial role precludes imposing different policy choices than those selected by the Legislature, our obligation is, by examining the statutory language, to discern the legislative intent that may reasonably be inferred from the words expressed in the statute. *People v McIntire*, 461 Mich 147, 152-153; 599 NW2d 102 (1999). If the language of a statute is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction

---

[3] 228 Mich App 268; 577 NW2d 696 (1998).
[4] 461 Mich 906 (1999).

is not permitted. *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). We must give the words of a statute their plain and ordinary meaning. MCL 8.3a; MSA 2.212(1); *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995).

### III. FREEDOM OF INFORMATION ACT CLAIM

#### A. INTRODUCTION

Subsection 1(2) of the FOIA declares that

[i]t is the public policy of this state that all persons . . . are entitled to *full and complete information regarding the affairs of government* and the official acts of those who represent them as public officials and public employees, consistent with this act. The people shall be informed so that they may fully participate in the democratic process. [MCL 15.231(2); MSA 4.1801(1)(2) (emphasis added).]

Consistent with this broadly declared legislative policy, the FOIA's specific provisions generally require the full disclosure of public records in the possession of a public body:[5]

(1) Upon an oral or written request which describes the public record sufficiently to enable the public body to find the public record, a person has a right to inspect, copy, or receive copies of a public record of a public body . . . .

(2) A public body shall furnish a requesting person a reasonable opportunity for inspection and examination of its public records, and shall furnish reasonable facilities for making memoranda or abstracts from its public records during the usual business hours. . . .

---

[5] The FOIA provisions at issue were amended shortly after this dispute arose. These amendments are not substantive and they are not relevant to our analysis.

(3) This act does not require a public body to make a compilation, summary, or report of information . . . .

[4] This act does not require a public body to create a new public record, except as required in sections 5 and 11, and to the extent required by this act for the furnishing of copies, or edited copies pursuant to section 14(1), of an already existing public record. [MCL 15.233; MSA 4.1801(3).]

The FOIA provides, in § 13, several exemptions which, if applicable, permit a public body to deny a request for disclosure of public records.[6] On its express terms, the FOIA is a prodisclosure statute, and the exemptions stated in § 13 are narrowly construed. *Mager, supra* at 143; *Bradley v Saranac Community Schools Bd of Ed*, 455 Mich 285, 293; 565 NW2d 650 (1997); *Swickard v Wayne Co Medical Examiner*, 438 Mich 536, 544; 475 NW2d 304 (1991). The burden of proof rests on the party asserting the exemption. *Bradley, supra* at 293; *Swickard, supra* at 544.

At issue in the instant case is the following FOIA exemption:

A public body may exempt from disclosure as a public record under this act:

(a) Information of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy. [MCL 15.243(1); MSA 4.1801(13)(1).]

---

[6] It is worth observing that the FOIA does not prevent disclosure of public records that are covered by § 13 exemptions. Rather, it requires the public body to disclose records unless they are exempt, in which case the FOIA authorizes *nondisclosure* at the agency's discretion. See *Mager, supra* at 138, n 8; *Bradley v Saranac Community Schools Bd of Ed*, 455 Mich 285, 293; 565 NW2d 650 (1997); *Tobin v Civil Service Comm*, 416 Mich 661, 666-671; 331 NW2d 184 (1982).

The trial court concluded that plaintiff's FOIA request was defective because it requested information rather than documents, and, alternatively, that the information requested was exempt from disclosure as "[i]nformation of a personal nature where the public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy." The Court of Appeals disagreed on both counts, and reversed the grant of summary disposition for defendants. We conclude that the requested records were not exempt from disclosure, and therefore affirm the holding of the Court of Appeals.

### B. PROPRIETY OF PLAINTIFF'S REQUEST

The FOIA does not establish detailed requirements for a valid request. Instead, it merely requires that a request "describe[] the public record sufficiently to enable the public body to find the public record." MCL 15.233(1); MSA 4.1801(3)(1). Defendants argue that plaintiff's request failed to meet this basic requirement. We disagree.

In this case, plaintiff requested "the names, current job titles, cities of residence and age of the seven final candidates for the job of Bay City fire chief." The city admits that this description was sufficient to allow it to find documents containing the information, but argues that the request was flawed because it requested the information itself, rather than documents containing the information.[7] Also according to defendants, to satisfy plaintiff's request, the city

---

[7] In response to questioning at oral argument, counsel for defendants acknowledged that the city "knew what [plaintiff was] looking for" and could have looked for documents that responded to plaintiff's request. We

would have had to "create a new public record." Defendants' arguments are deeply flawed.

We begin by reiterating that the Legislature entitled this statute the "Freedom of *Information* Act," and declared as the public policy of this state "that all persons . . . are entitled to full and complete *information* regarding the affairs of government . . . ." MCL 15.231(2); MSA 4.1801(1)(2) (emphasis added).

Consistent with this stated purpose, the Legislature did not impose detailed or technical requirements as a precondition for granting the public access to information. Instead, the Legislature simply required that any request be sufficiently descriptive to allow the public body to find public records containing the information sought. In contrast, the city would have us read an additional requirement into the statute—that a request must describe the specific public records to be disclosed. We have no authority to impose requirements not found in the statute, and we note that it would be odd indeed to ask a party who has no access to public records to attempt specifically to describe them. Because the request in this case was sufficient to allow the city to find the requested information, the request was valid under MCL 15.233(1); MSA 4.1801(3)(1).

Defendants' related argument contends that plaintiff's request would have required the city to create a new public record—something the statute expressly states that the city is not required to do. MCL 15.233(4); MSA 4.1801(3)(4). Again, we disagree with defendants' construction of the FOIA.

---

also note that, in its request, plaintiff specifically offered to provide further description, if necessary.

Plaintiff's request did not specify or require the disclosure of any document, newly created or otherwise, from the city. It simply asked for information. Under the FOIA, the city could have satisfied the request in several different ways. It could have allowed plaintiff access to the public records containing the information (such as the applicants' résumés or applications), it could have allowed plaintiff to copy the public records containing the information, or it could have provided plaintiff with copies of the public records containing the information. MCL 15.233(1); MSA 4.1801(3)(1). It is true that the request also could have been satisfied by the city's creation of a new public record, but plaintiff did not request creation of such a record, and the fact that the city had no obligation to create a record says nothing about its obligation to satisfy plaintiff's request in some other manner as required by the FOIA.[8]

## C. PRIVACY EXEMPTION

Defendants also argue that the information plaintiff requested is exempt from disclosure as "information of a personal nature" pursuant to MCL 15.243(1); MSA 4.1801(13)(1). The trial court agreed, finding that public disclosure of the information would constitute a clearly unwarranted invasion of the applicants' privacy. The Court of Appeals disagreed, reasoning that

[8] We find defendants' asserted construction of the FOIA to be disingenuous and contrary to a common-sense application of its express terms. Plaintiff's request made specific reference to the FOIA, including its statutory citation. Defendants acknowledge that the request clearly specified the information sought. Defendants do not dispute that most, if not all, the requested information was contained in public records in the city's possession.

the information disclosed is not "of a personal nature," and, alternatively, that "[d]isclosure of the requested information would not constitute a clearly unwarranted invasion of privacy because nothing of a highly personal nature would be disclosed." 228 Mich App 290.

This case requires us to decide whether the fact of application for a particular public job and information supplied therewith is "information of a personal nature" and, if so, whether the disclosure of such information would "constitute a clearly unwarranted invasion of an individual's privacy."

We begin by once again observing that this exception involves " 'a highly subjective area of the law where the Legislature has provided little statutory guidance' . . . ." *Mager, supra* at 143, quoting *Swickard, supra* at 556. Bearing this in mind, we conclude that the information sought is not personal, and, moreover, that its revelation would not constitute a clearly unwarranted invasion of privacy.

### 1. "PERSONAL NATURE" OF THE INFORMATION

The text of the statute at issue reveals little about the Legislature's intended scope when it provided an exemption for "information of a personal nature." From this Court's numerous attempts to fashion a workable formulation for determining on a case-by-case basis whether requested information is "personal" within the Legislature's contemplation, the following standard has emerged:

"[W]e conclude that information is of a personal nature if it reveals *intimate or embarrassing details of an individual's private life.* We evaluate this standard in terms of 'the

"customs, mores, or ordinary views of the commu-
nity" . . . .' " [*Mager, supra* at 142, quoting *Bradley, supra*
at 294 (emphasis added).]

Applying this standard in *Bradley,* we determined
that personnel records of public school teachers and
administrators were not of a "personal nature":

> Significantly, none of the documents contain information
> of an embarrassing, intimate, private, or confidential nature,
> such as medical records or information relating to the plain-
> tiffs' private lives. Moreover, the appellants have not alleged
> specific private matters that would be revealed by the dis-
> closure of their personnel records. Instead, the requested
> information consists solely of performance appraisals, disci-
> plinary actions, and complaints relating to the plaintiffs'
> accomplishments in their public jobs. Because the re-
> quested information does not disclose intimate or embar-
> rassing details of the plaintiffs' private lives, we hold that
> the requested records do not satisfy the personal-nature ele-
> ment of the privacy exemption. [*Id.* at 295.]

More recently, in *Mager, supra,* we applied this
same standard and reached the opposite conclusion
because of the nature of the request at issue there. In
*Mager,* the plaintiff requested that the State Police
provide the names and addresses of persons who
owned registered handguns. In determining that the
fact of gun ownership was "information of a personal
nature," we noted that "[t]he ownership and use of
firearms is a controversial subject," and that "[a] citi-
zen's decision to purchase and maintain firearms is a
personal decision of considerable importance." *Id.* at
143. Accordingly, we held that "gun ownership is an
intimate or, for some persons, potentially embarrass-
ing detail of one's personal life." *Id.* at 144.

In contrast to the fact of gun ownership, which—assessing the customs, mores or ordinary views of the community—certainly may be viewed as an intimate and potentially embarrassing aspect of one's private life, we conclude that the fact of application for a public job, or the typical background information one may disclose with such an application, is simply not "personal" within the contemplation of this exemption. Given the public nature of the position at issue, we think it difficult to conclude that the "customs," "mores," and "views" of the community contemplate that an application for such a position could be made without expectation of considerable public scrutiny. Certainly, defendants have failed to establish on this record why any of the information requested by plaintiff is the kind of intimate or embarrassing information that this FOIA exception protects.

Importantly, even if the requested information was contained in public documents that also referenced embarrassing or intimate personal information (for example, medical data), the FOIA imposes on the city a duty to "separate the exempt and nonexempt material and make the nonexempt material available for examination and copying." MCL 15.244(1); MSA 4.1801(14)(1); see also *Evening News Ass'n v City of Troy*, 417 Mich 481, 503; 339 NW2d 421 (1983).

2. "CLEARLY UNWARRANTED INVASION"
OF PRIVACY ELEMENT

Although we have already concluded that the information sought was not characteristically "of a personal nature" and, therefore, that the privacy exemption does not apply, we will now briefly address the

second step of the inquiry: whether disclosure would "constitute a clearly unwarranted invasion" of privacy.

We first note that the trial court committed an error of law when it proceeded directly to this inquiry without first determining whether the request sought information that was of a "personal nature." The trial court additionally erred when it concluded that, on these particular facts, disclosure of the requested information would have constituted a "clearly unwarranted invasion" of privacy. By providing that the invasion of privacy must be *clearly unwarranted*, the Legislature has unmistakably indicated that the intrusion must be more than slight, but a very significant one indeed.

In *Mager*, we determined that disclosure of the names and addresses of registered gun owners would constitute a clearly unwarranted invasion of the gun owners' privacy. Taking guidance from federal decisions concerning the federal FOIA, we noted that " 'a court must balance the public interest in disclosure against the interest [the Legislature] intended the exemption to protect.' " *Id.* at 145, quoting *United States Dep't of Defense v Federal Labor Relations Authority*, 510 US 487, 495; 114 S Ct 1006; 127 L Ed 2d 325 (1994). We further held that the relevant "public interest" to be weighed in this balance " 'is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding *of the operations or activities of the government.*' " *Mager, supra* at 145, quoting *United States Dep't of Defense, supra* at 495 (emphasis in original).

On the basis of the foregoing, we held that fulfilling a request for personal information concerning private

citizens, where the request was "entirely unrelated to any inquiry regarding the inner working of government," would constitute a clearly unwarranted invasion of privacy. *Mager, supra* at 146. In short, when the information sought is embarrassing or intimate, and the relationship between the personal information to be disclosed and the operations of our government is slight, the weaker is the case that disclosure should be made under the FOIA.

In contrast to the highly personal information at issue in *Mager*, we conclude that disclosure of the information concerning the final candidates for fire chief in the instant case *would* serve the policy underlying the FOIA because disclosure would facilitate the public's access to information regarding the affairs of their city government. It can hardly be challenged that the citizens of Bay City had a valid interest in knowing the identities of the final candidates considered in contention for this high-level public position. Keeping in mind that defendants bear the burden of proof that an exemption applies, and balancing the public interest against the relatively circumscribed privacy interest protected by the FOIA exemption, we cannot conclude that the disclosure sought might result in a "clearly unwarranted invasion of an individual's privacy."[9]

---

[9] It has been suggested by the city that we should consider a provision of the OMA in deciding whether the information at issue is protected by the FOIA privacy exemption. As will be discussed in the second part of this opinion, the OMA generally requires that meetings of a public body be open to the public. However, the OMA contains an exception providing that a public body may meet in a closed session "[t]o review and consider the contents of an application for employment or appointment to a public office if the candidate requests that the application remain confidential." MCL 15.268(f); MSA 4.1800(18)(f). Because we hold that none of the candidate reviews and interviews in this case was conducted by a "public

### IV. OPEN MEETINGS ACT CLAIM

#### A. INTRODUCTION

The OMA provides, in part:

> (1) All meetings of a public body shall be open to the public and shall be held in a place available to the general public. . . .
> (2) All decisions of a public body shall be made at a meeting open to the public.
> (3) All deliberations of a public body constituting a quorum of its members shall take place at a meeting open to the public . . . . [MCL 15.263; MSA 4.1800(13).]

The statute strictly limits "closed session" meetings of public bodies and expressly states that, "except as otherwise provided . . . , all interviews by a public body for employment or appointment to a public office shall be held in an open meeting pursuant to this act." MCL 15.268(f); MSA 4.1800(18)(f).

#### B. ANALYSIS

Plaintiff argues that (1) the city manager in this case was a public body, (2) the city manager and city commission together formed a public body, and (3) in any event, the committee that established the hiring criteria, screened the initial applications, and conducted interviews before reducing the field to three applicants was a public body. The Court of Appeals agreed that the city manager may be a public body in his own right, and that he is certainly part of a public body when he acts in concert with the city commis-

---

body," we need not determine whether application of this OMA provision would change our analysis.

sion. We disagree with the analysis suggested by plaintiff and the Court of Appeals.

The threshold issue under the OMA is whether an entity is a "public body." The OMA defines "public body" as

> any state or local legislative or governing body, including a board, commission, committee, subcommittee, authority, or council, which is empowered by state constitution, statute, charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function, or a lessee thereof performing an essential public purpose and function pursuant to the lease agreement. [MCL 15.262(a); MSA 4.1800(12)(a).]

The definition of "public body" in the OMA contains two requirements: First, the entity at issue must be a "state or local legislative or governing body, including a board, commission, committee, subcommittee, authority, or council." Second, the entity must be "empowered . . . to exercise governmental or proprietary authority or perform a governmental or proprietary function," and that power must derive from "state constitution, statute, charter, ordinance, resolution, or rule . . . ."

As used in the OMA, the term "public *body*" connotes a collective entity. The statutory terms used illustratively to define "public body"—"legislative body" and "governing body"—do not encompass individuals. A single individual is not commonly understood to be akin to a "board," "commission," "committee," "subcommittee," "authority," or "council"—the bodies specifically listed in the act by the Legisla-

ture.[10] We draw additional comfort in our construc-
tion of the OMA because the Legislature is certainly
free to define, and has, in fact, defined elsewhere, the
term "public body" in such a way as to encompass
individuals.[11] However, it would be awkward, to say

---

[10] This construction is further bolstered by the ordinary definition of
"body." *The American Heritage Dictionary of the English Language*
(New College ed), p 147, defines "body" as "[a] group of individuals
regarded as an entity" and "[a] number of persons, concepts, or things
regarded collectively; a group." *Webster's New Collegiate Dictionary* (7th
ed), p 94, similarly defines the term as "a group of persons or things" and
"a group of individuals organized for some purpose . . . (a legislative
[body])." The dissent suggests that we have ignored the definition of
"body" that refers to the *human* body. We find that proposition to be
unworthy of further comment.

Justice KELLY also argues in her dissent that the city manager is an
"authority" and thus a public body subject to the OMA. We acknowledge
that "authority" is one of the illustrative entities listed in the OMA describ-
ing what constitutes a "public body." However, we disagree with Justice
KELLY's conclusion that an individual may constitute an OMA "authority."

"Contextual understanding of statutes is generally grounded in the doc-
trine of *noscitur a sociis*," which "stands for the principle that a word or
phrase is given meaning by its context or setting." *Tyler v Livonia Public
Schools*, 459 Mich 382, 390-391; 590 NW2d 560 (1999). See also *Wilmers v
Gateway Transportation Co (On Remand)*, 227 Mich App 339, 352; 575
NW2d 796 (1998) (YOUNG, P.J., dissenting). Accordingly, the term "author-
ity" must be viewed in light of the other terms employed in the OMA defini-
tion of "public body," which provide guidance regarding what "authority"
means in this context. "[I]n seeking meaning, words and clauses will not
be divorced from those which precede and those which follow." *Sanchick
v State Bd of Optometry*, 342 Mich 555, 559; 70 NW2d 757 (1955).

In the statutory definition of "public body," all designated bodies other
than "authority" are necessarily multimember bodies. Thus, the principle
of *noscitur a sociis* indicates that "authority" should likewise be inter-
preted in this context as referring only to a multimember body.

[11] Indeed, the Legislature knows how to include individuals within the
definition of "public body" when it intends to, as it did when it defined
"public body" for purposes of the FOIA:

"Public body" means any of the following:

(i) *A state officer, employee*, agency, department, division,
bureau, board, commission, council, authority, or other body in the
executive branch of the state government, but does not include the
*governor* or *lieutenant governor*, the executive office of the gover-
nor or lieutenant governor, or employees thereof.

the least, to apply the OMA to an individual. Perhaps the strongest common-sense basis for concluding that an individual was not contemplated by the Legislature as a "public body" is to consider how odd a concept it would be to require an individual to "deliberate" in an open meeting. MCL 15.263(3); MSA 4.1800(13)(3). Thus, we conclude that an individual executive acting in his executive capacity is not a public body for the purposes of the OMA.[12]

The Court of Appeals observed that, under the Bay City Charter, the city commission shall appoint a fire chief "on the recommendation of the city manager."[13]

---

(ii) An agency, board, commission, or council in the legislative branch of the state government.

(iii) A county, city, township, village, intercounty, intercity, or regional governing body, council, school district, special district, or municipal corporation, or a board, department, commission, council, or agency thereof.

(iv) Any other body which is created by state or local authority or which is primarily funded by or through state or local authority.

(v) The judiciary, including the office of the county clerk and employees thereof when acting in the capacity of clerk to the circuit court, is not included in the definition of public body. [MCL 15.232(d); MSA 4.1801(2)(d) (emphasis added).]

Given this FOIA definition of "public body" that explicitly includes individuals, we cannot conclude, as does the dissent, that the Legislature intended to include single-member entities as public bodies within the meaning of the OMA, where the Legislature referenced only multimember entities.

[12] We note that an individual executive may be *part* of a public body as defined by the OMA. See, for example, *Menominee Co Taxpayers Alliance, Inc v Menominee Co Clerk*, 139 Mich App 814; 362 NW2d 871 (1984), wherein a statute mandated that persons holding "executive" positions (the county clerk, the prosecutor, and a probate judge) collectively select a county treasurer. However, when, as here, the executive is performing functions exclusively vested in the solitary executive, as opposed to a legally mandated group, the executive is not a public body within the meaning of the OMA.

[13] The complete charter provision states:

The city commission shall appoint for such terms as it may establish the following officers: clerk, treasurer, comptroller,

According to the Court of Appeals, that provision arguably "effectively delegates the function of selecting the fire chief to the city manager."[14] We disagree with the proposition that an individual executive making a recommendation to a deciding body constitutes a *delegation* of authority. The city commission did not delegate to the city manager the responsibility to make a recommendation; that authority is given directly to the city manager by the charter. Further, the fact that the charter requires the city commission to act only on the recommendation of the city manager in no way constitutes a delegation of the commission's right to make the final determination regarding whether a recommended individual should be appointed to the position under the Bay City Charter.[15]

We see no merit to plaintiff's contention that the city manager and city commission together constitute a public body. Certainly the city commission constitutes a public body when it appoints a fire chief, but

---

assessor, deputy assessor, attorney, and on the recommendation of the city manager, chief of police, fire chief, superintendent of electric light, superintendent of waterworks, engineer, street commissioner, superintendent of parks and superintendent of bridges.

[14] 228 Mich App 276.

[15] Even if true, this observation would establish, at best, that the city manager is empowered by the Bay City Charter to exercise governmental authority, satisfying the second requirement for a public body under the OMA. This arguable conclusion does not establish the first requirement—that the city manager was a legislative or governing body. In any event, we disagree with any construction of the city charter as *requiring* the city commission to appoint as fire chief a particular candidate who is recommended by the city manager. The only reasonable interpretation of the pertinent charter provision is that the city manager must recommend a candidate for fire chief who then may (or may not) be appointed by the city commission. The city commission retains the exclusive right to reject recommended candidates until the one it finds satisfactory is presented by the city manager.

the city manager remains an individual executive. We see no basis in the OMA to combine for the purposes of this statute two separate entities where each entity is performing its own independent function as designated in the city charter. The cases plaintiff relies on for this proposition are inapposite.

In *Menominee Co Taxpayers Alliance, Inc v Menominee Co Clerk*, 139 Mich App 814; 362 NW2d 871 (1984), the Court held that a group formed as required by statute to select a new county treasurer was a public body for the purposes of the OMA.[16] The group consisted of the county clerk, the prosecutor, and a probate judge. After the county treasurer resigned, this statutorily prescribed group met in private and selected a new treasurer. The plaintiff then filed suit alleging that the group was a public body subject to the OMA. After the trial court dismissed the case, the Court of Appeals reversed and held that the group was a public body. *Id.* at 819.

The group in *Menominee* was a collective body in the plainest sense, thus satisfying the first requirement for a public body under the OMA. The fact that the three members held other positions was essentially irrelevant because, while on the committee, they were voting members of a group that was empowered by statute to exercise governmental authority. In the present case, the city manager was acting as a city

---

[16] The relevant statute, MCL 168.209(2); MSA 6.1209(2), as in effect at the time of the court's decision in *Menominee*, provided:

If the vacancy shall be in any other county office [other than county clerk or prosecuting attorney], either elective or appointive, the presiding or senior judge of probate, the county clerk and the prosecuting attorney shall appoint some suitable person to fill such vacancy.

manager, not as a commissioner or committee member.

Plaintiff also relies on our holding in *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211; 507 NW2d 422 (1993), to support the proposition that the city manager, individually, constituted a public body. Like *Menominee, Booth* is not analogous to the present case. In *Booth*, the University of Michigan Board of Regents attempted to evade the requirements of the OMA during the process of selecting a new university president. The board took several evasive actions, including: (1) appointing itself as a presidential selection committee, (2) entrusting one regent with the authority to make "cuts" in the candidate list, (3) using a system of telephone calls and subquorum meetings to gather the opinions of all regents without convening a meeting of a quorum of the board, and (4) having small, subquorum groups of regents interview candidates. *Id.* at 216-219. This Court held that the board violated the OMA. The important distinguishing feature of *Booth* was that the board was clearly a "public body" that was subject to the OMA, and the various regents and subquorum groups had no independent authority to narrow the field, make a recommendation, or select a president. The board effectively sought to delegate its authority as a body subject to the OMA to various bodies of its own creation that it believed were not subject to the OMA, for the express purpose of avoiding the requirements of the OMA.[17]

---

[17] We note that, after our decision in *Booth*, this Court held that the OMA cannot constitutionally be applied to a public university in the context of a presidential search. *Federated Publications, Inc v Mich State Univ Bd of Trustees*, 460 Mich 75; 594 NW2d 491 (1999).

Thus, the decision in *Booth* precluded an attempt by a public body to evade the OMA (and thus circumvent legislative intent) by delegating its authority. In this case, the city manager was assigned the task of recommending a new fire chief directly by the city charter, and, therefore, he required no delegation of authority from the city commission in order to perform that function. Under these circumstances, the Legislature, by electing not to include individuals in the definition of public body in the OMA, has exempted the city manager from its requirements.[18]

Nor do we agree with the contention that the committee that was formed by the city manager was subject to the requirements of the OMA under the rationale in *Booth*. The city manager may have delegated some of *his* authority to the committee he created and, were the city manager himself subject to the OMA, the committee he created might also have been subject to the OMA pursuant to *Booth*. Here, however, because the city manager was not subject to the OMA, *Booth* has no application. Because the city manager's committee in this case was not "empowered by state constitution, statute, charter, ordinance, resolution, or rule," it was not a public body for purposes of the

---

[18] We do not quarrel with the conclusion in *Booth* that an individual member of a public body may, under certain circumstances, qualify as a "public body." The distinguishing factor is that, in *Booth*, there existed a public body in the first instance—the Board of Regents—that impermissibly attempted to delegate its authority as a *body* to subunits of its *individual* members. Here, no such delegation by a public body occurred. Similarly, in *Booth*, the Board of Regents purposely attempted to evade the requirements of the OMA. No such evasive activity occurred in the present case. Today's decision in no way dilutes *Booth's* recognition that the purpose of the OMA cannot be evaded by arguing form over substance. *Booth, supra* at 226.

OMA, and the committee's actions did not violate that
statute.[19]

### V. CONCLUSION

For the reasons stated, in regard to plaintiff's Free-
dom of Information Act claim, we affirm the decision
of the Court of Appeals, and we remand for proceed-
ings consistent with this opinion. Regarding plaintiff's
Open Meetings Act claim, we reverse the judgment of
the Court of Appeals and reinstate the trial court's
grant of summary disposition for defendants.

WEAVER, C.J., and CAVANAGH, TAYLOR, CORRIGAN, and
MARKMAN, JJ., concurred with YOUNG, J.

KELLY, J. (*concurring in part and dissenting in
part*). I agree with the majority's analysis and conclu-
sion regarding the Freedom of Information Act (FOIA)[1]

---

[19] We recognize that one member of the city manager's committee,
Jacob Hutter, was a city commissioner. This does not affect our analysis.
In sharp contrast to the facts of *Booth*, in which a public body attempted
to delegate authority to an individual member of that body in an effort to
avoid compliance with the OMA, Hutter—although a member of the public
body that would ultimately determine who would be appointed fire
chief—was not given any individual authority to make hiring decisions.
Furthermore, the committee's duties—as specified by McCandless, not the
city commission—were of a purely advisory nature. Thus, *Booth* on this
score is also inapposite.

Finally, we acknowledge that the committee formed by the city man-
ager was a multimember entity of the kind recognized in the OMA, and that
the committee arguably "exercise[d] governmental or proprietary author-
ity or performe[d] a governmental or proprietary function." However, the
committee, as the creation of the city manager, did not derive its power
from "state constitution, statute, charter, ordinance, resolution, or
rule . . . ." Therefore, the committee does not meet the second require-
ment of the OMA's definition of "public body," and it was not subject to
that act.

[1] MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.*

issue. However, I dissent from its analysis and conclusion regarding the Open Meetings Act (OMA).[2]

### I. THE CITY MANAGER IS A "PUBLIC BODY"

The majority holds that a person in his individual capacity cannot be a "public body" as defined under the OMA, distinguishing *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211; 507 NW2d 422 (1993). *Ante*, pp 128-135.

In *Booth*, the eight-member University of Michigan Board of Regents designated itself as the Presidential Selection Committee and embarked on the task of choosing a new university president. The committee made Regent Paul W. Brown chairman and also formed three advisory subcommittees. In all, five candidate-reduction decisions were made. *Id.* at 215. In the first, second, and fourth "cuts," the candidate field was reduced from 250 to 70, 70 to 30, and 12 to 5, respectively. Regent Brown made the reduction decisions, although in doing so he consulted with the other regents, either by telephone or, in the case of the fourth cut, in a closed session. *Id.* at 216-218.

This Court found that the OMA applied to the Presidential Selection Committee's procedures. It rejected the defendant's argument that the chairman did not act as a committee, that he was not a "public body," and was, thus, outside the purview of the OMA. This Court found that the board's argument elevated form over substance:

> [D]elegating the task of choosing a public university president to a one-man committee, such as Regent Brown,

---

[2] MCL 15.261 *et seq.*;  MSA 4.1800(11) *et seq.*

would warrant the finding that this one-man task force was in fact a public body. . . . "We do not find the question of whether a multi-member panel or a single person presides to be dispositive. Such a distinction carries with it the potential for undermining the Open Meetings Act . . . ."

[T]he selection of a public university president constitutes the exercise of governmental authority, regardless of whether such authority was exercised by Regent Brown, the nominating committee, the full board, or even subcommittees. Accordingly, this individual or these entities must be deemed "public bodies" within the scope of the OMA. [*Id.* at 226, quoting *Goode v Dep't of Social Services*, 143 Mich App 756, 759; 373 NW2d 210 (1985) (internal citation omitted).]

The majority notes that in *Booth*, the Board of Regents, clearly a "public body" subject to the OMA, sought to evade the OMA by delegating its authority to the chairman of the Presidential Selection Committee. In the present case, however, the city commission did not delegate its authority to the city manager. The city manager was empowered by the city charter to recommend someone for the fire chief position. The city manager remained an individual executive throughout the selection process, and there is "no basis in the OMA to combine . . . two separate entities where each entity is performing its own independent function as designated in the city charter." *Ante*, pp 132-133. Thus, the majority holds *Booth* inapposite.

The majority's attempt to distinguish *Booth* from the present case is unpersuasive. Although the *Booth* decision involved a delegation of power, it did not limit itself to situations where a delegation had taken place. Rather, the *Booth* Court was concerned that form not prevail over substance and that the OMA's legislative purpose "to promote a new era in govern-

mental accountability" not be defeated.[3] *Booth, supra* at 222.

Regardless of the validity of the grounds on which the majority distinguishes *Booth* from the present case, I would hold that the city manager was a public body for purposes of the OMA.

The OMA defines "public body" as:

> [A]*ny* state or *local legislative or governing body, including* a board, commission, committee, subcommittee, *authority,* or council, *which is empowered by* state constitution, statute, *charter,* ordinance, resolution, or rule *to exercise governmental or proprietary authority or perform a governmental or proprietary function* . . . . [MCL 15.262(a); MSA 4.1800(12)(a) (emphasis added).]

The OMA does not define the term "authority" and, as the word has no unique meaning at law, it is appropriate to consult a lay dictionary for its definition. *People v Morey,* 461 Mich 325, 330; 603 NW2d 250 (1999); *Horace v City of Pontiac,* 456 Mich 744, 756; 575 NW2d 762 (1998); MCL 8.3a; MSA 2.212(1). The relevant definition of "authority" from *Random House Webster's College Dictionary,* p 92, is "a person or body of persons in whom authority is vested, as a governmental agency." Thus, the language of the OMA, itself, permits an individual to be considered a "public body."[4]

---

[3] " 'Open government is believed to serve as both a light and disinfectant in exposing potential abuse and misuse of power. The deliberation of public policy in the public forum is an important check and balance on self-government.' " *Id.* at 223, quoting Osmon, *Sunshine or shadow: One state's decision,* 1977 Det Col L R 613, 617. The *Booth* Court also noted that, historically, the OMA has been interpreted as broadly applicable, while its exemptions are construed strictly. *Id.*

[4] While the majority recites the term "authority" in the OMA's definition of "public body," it omits to note the plain meaning and common usage of

## II. BY MEANS OF HIS DECISIONS,
### THE CITY MANAGER EXERCISED GOVERNMENTAL AUTHORITY AND PERFORMED A GOVERNMENTAL FUNCTION

I also find that reduction of the candidate pool by the city manager through interviews was a "decision" that must be made at an open meeting by mandate of the OMA.[5] The majority does not refute *Booth*'s holdings (1) that decisions under the OMA encompass

that term. Also, it consults a lay dictionary for a definition of the word "body," when the term "public body" is expressly defined in the statute itself. *Ante*, p 129. Furthermore, the majority cites those definitions indicating a "body" is "a group," yet glosses over the definition stating that a "body" is "a person," e.g., some*body*, any*body*, what's a *body* to do?, a public *body*. *Id.* The majority is mistaken in interpreting me as including in the definition any reference to the human body. *Ante*, p 129, n 10.

The majority argues that the doctrine of *noscitur a sociis* precludes individuals from the definition of authority, because the other specifically enumerated examples of a public body "are necessarily multimember bodies." *Ante*, p 130, n 10. In response, I reiterate that in *Booth* this Court found that an individual could constitute a "committee." Other illustrative entities constituting public bodies under the OMA, besides an authority, are not uniformly multimember bodies. *Booth, supra* at 226.

The Legislature states that a "public body" under the FOIA can be a state officer, employee, governor, or lieutenant governor. It does not so state in the OMA. The majority asserts that that omission reflects an intent to preclude individuals from its scope. *Ante*, p 130, n 11. I disagree. Determining legislative intent regarding the OMA by examining the FOIA violates several cardinal rules of statutory construction. A court must consider the object of the statute, together with the harm it is designed to remedy, and then apply a reasonable construction that best accomplishes its purpose. *People v Adair*, 452 Mich 473, 479-480; 550 NW2d 505 (1996). Nothing should be read into a statute that is not within the manifest intention of the Legislature, as gathered from the act itself. *In re S R*, 229 Mich App 310, 314; 581 NW2d 291 (1998). The fair and natural import of the terms employed, in view of the subject matter of the law, should govern. *In re Wirsing*, 456 Mich 467, 474; 573 NW2d 51 (1998). The broad, inclusive language employed in the OMA attests to its prodisclosure nature and its purpose to promote government accountability. *Booth, supra* at 222-224 and 230. Thus, the exceptions to disclosure should be strictly construed. *Id.* at 223, n 13. And the term "authority" should be read, according to its plain meaning, to include individuals.

[5] " 'Decision' means a determination, action, vote, or disposition upon a motion, proposal, recommendation, resolution, order, ordinance, bill, or measure on which a vote by members of a public body is required and by

more than formal votes, (2) that "reduction decisions" must be made in public and are not protected by the "specific contents" exception of the OMA,[6] and (3) that interviews are "meetings" that must be held in public.[7] *Booth, supra* at 230; *ante,* pp 133-135.

Finally, the city charter provides:

> The city commission *shall* appoint . . . on the recommendation of the city manager . . . [the] fire chief . . . . [Bay City Charter, art VII, § 1 (emphasis added).]

This Court has consistently held that the word "shall" imposes a mandatory duty. See *State Hwy Comm v Vanderkloot,* 392 Mich 159, 181; 220 NW2d 416 (1974). This language compels the city commission to appoint a candidate that the manager recommends.

The majority states that the only reasonable interpretation of the charter's language permits the city commission to reject a candidate recommended by the city manager. However, the candidate who is ulti-

---

which a public body effectuates or formulates public policy." MCL 15.262(d); MSA 4.1800(12)(d).

[6] A public body may meet in a closed session only for the following purposes:

\*     \*     \*

(f) To review and consider the contents of an application for employment or appointment to a public office if the candidate requests that the application remain confidential. *However, except as otherwise provided in this subdivision, all interviews by a public body for employment or appointment to a public office shall be held in an open meeting pursuant to this act.* [MCL 15.268; MSA 4.1800(18) (emphasis added).]

After *Booth,* the Legislature amended the contents exception to the OMA so that it does not apply in the process of searching for and selecting a president of certain institutions. 1996 PA 464, § 1; MCL 15.268(f) and (j); MSA 4.1800(18)(f) and (j).

[7] " 'Meeting' means the convening of a public body at which a quorum is present for the purpose of deliberating toward or rendering a decision on a public policy." [MCL 15.262(b); MSA 4.1800(12)(b).]

mately appointed, if any, must have been recommended by the city manager. I agree. What is relevant, here, is that the city commission cannot appoint absent the separate prior action of the city manager. Both must act before a fire chief can be appointed. Therefore, the city manager is a public body in his own right and exercises governmental authority in conducting interviews and making reduction decisions.[8] The majority's finding that the actions of the city manager are not subject to the OMA allows any city to circumvent the act by adopting similar charter language. *Goode, supra* at 759.

### III. CONCLUSION

I would affirm the Court of Appeals holding that the defendants acted in violation of the OMA. As with the chairman in *Booth*, the city manager here is subject to the OMA. A contrary finding places form over substance and undermines the act. The city manager is a "public body" because that individual is an "authority." The city manager, in interviewing candidates and reducing the field of candidates made decisions, performed governmental functions, and exercised governmental authority. Under the city charter, the manager is one of two public bodies that, working together, determine who will be the Bay City Fire Chief. Therefore, the city manager's actions were subject to the OMA and should have been undertaken at a public meeting.

---

[8] In forming a committee to assist him in interviews and candidate reduction, the city manager delegated some of his authority. The authority delegated was derived from the city charter. Its exercise was subject to the OMA, which requires that the exercise of authority be done at a public meeting. The situation is directly analogous to the Board of Regents' delegation of its authority to Chairman Brown in *Booth*. *Booth, supra* at 226.