*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ATTITUDE WELLNESS, LLC,

    Plaintiff-Appellant,

v

CITY OF ROYAL OAK,

    Defendant-Appellee,

and

PGSH HOLDINGS, LLC,

    Intervening Defendant-Appellee.

UNPUBLISHED
April 23, 2026
10:55 AM

No. 371309
Oakland Circuit Court
LC No. 2022-192288-CZ

Before: CAMERON, P.J., and BORRELLO and SWARTZLE, JJ.

SWARTZLE, J. (*partially concurring in the opinion, fully concurring in the judgment*)

  I concur in all but Part III of the majority's opinion, and I concur fully in the judgment. With respect to Part III, but for the binding precedent of *Exclusive Cap Partners, LLC v Royal Oak*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 366247), I would affirm the trial court's grant of summary disposition to the City of Royal Oak on plaintiff's claim under the Open Meetings Act (OMA), MCL 15.261 *et seq*.

  To begin, it is not at all clear to me that the *Exclusive Cap Partners* Court concluded that the city manager plus the manager's workgroup collectively constituted the "public body" for purposes of the OMA. Rather, it appears that the Court concluded that the delegation had been made solely to the city manager, and thus it was the manager *himself* who constituted the "public body." *Id.* at ___; slip op at 23 ("Because the city manager made a de facto policy choice for the City Commission, the city manager met the definition of 'governing body,' and, thus, was subject to the OMA."); see also *id*. at ___; slip op at 23 n 8 ("Standing alone, the workgroup did not qualify as a public body because no public body delegated authority to it. It acted solely in advisory capacity. The city manager made the ultimate ranking after consultation and there was no indication that the city manager delegated any of *his authority* under the marijuana ordnance to the workgroup." (Emphasis added.)).

-1-

If my reading of *Exclusive Cap Partners* is correct, then I believe that the Court in that case wrongly concluded that the city manager was a "public body" subject to the OMA. In my opinion, it must be a narrow category indeed where a single person can be considered a "public body" for purposes of the OMA. There is, for example, no suggestion—explicit or implicit—in the text of the OMA itself that the Legislature intended for a single person to be considered a "public body," even as a delegated, de facto one. See, e.g., MCL 15.262(a) (defining "public body" and including examples that are all collective in nature). This in in contrast to other "sunshine" laws of this state, where our Legislature has included single persons within the definition of a public body. See, e.g., MCL 15.232(h)(*i*) (including a state officer or employee in the definition of "public body" for purposes of the freedom of information act). This alone should give courts more pause before stretching outside of the text of the OMA to read "public body" with enough elasticity to include a single person.

The example that plaintiffs in similar OMA cases frequently cite is *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211; 507 NW2d 422 (1993), though even in that rather unique case, the subunits to which the Board delegated its authority included its own individual members, i.e., a member or members of the Board of Regents were part of the de facto public bodies. Here, as in *Exclusive Cap Partners*, the city manager was not a member of the City Commission. Thus, this case is closer to *Herald Co v Bay City*, 463 Mich 111, 135; 614 NW2d 873 (2000) (citation omitted), where it was noted that "the Legislature, by electing not to include individuals in the definition of public body in the OMA, has exempted the city manager from its requirements."

More could be said on the OMA claim, but as the majority notes, *Exclusive Cap Partners* is currently before our Supreme Court, and additional points need not be repeated in this unpublished, intermediate appellate court concurrence.

Lastly and on a separate note, in addition to the sound reasons relied upon by the majority on plaintiff's dormant Commerce Clause claim, there is another reason why that claim must fail—possession and sale of the "good" here (i.e., marijuana) remains unlawful under federal law. This is simply not the type of "national marketplace" that Congress has seen fit to protect under our U.S. Constitution. *Peridot Tree WA, Inc v Washington State Liquor & Cannabis Control Bd*, 162 F4th 1179, 1184-1190 (CA 9, 2026).

For these reasons, and with respect, I partially concur in the majority's opinion and fully concur in the judgment.

/s/ Brock A. Swartzle