CAVANAGH, J.
(dissenting). Today’s majority decision is an example of a court properly articulating the law, yet failing to apply it correctly. Because I strongly disagree with the majority’s position that the trial court did not abuse its discretion when it held that defendant Eastern Michigan University Board of Regents met its burden under the Freedom of Information Act (FOIA), MCL 15.231 et seq., I must respectfully dissent.
I. FACTS AND PROCEEDINGS
Plaintiff Herald Company, Inc., doing business as Booth Newspapers, Inc., and Ann Arbor News, sought disclosure of a number of public records related to the building of the Eastern Michigan University president’s new house.[1] One of the records requested was a letter written by Eastern Michigan University’s vice president of finance, Patrick Doyle. Doyle wrote the letter at the request of an Eastern Michigan University regent to offer insight about expenditures associated with the president’s residence. Defendant granted in part plaintiffs request for documents, but it declined to produce *485 the Doyle letter, citing MCL 15.243(l)(m). Plaintiff filed a complaint under the FOIA, and the trial court granted summary disposition to defendant, finding that the letter was exempt from disclosure under the “frank communication” exemption of the FOIA, MCL 15.243(l)(m). The trial court listed four reasons why it believed that the letter was exempt.
(1) The letter contains substantially more opinion than fact, and the factual material is not easily severable from the overwhelming majority of the contents: Doyle’s views concerning the President’s involvement with the University House project.
(2) The letter is preliminary to a final determination of policy or action. The communication was between officials of public bodies. The letter concerns Defendant’s investigation and ultimate determination of what action, if any, would be taken regarding the University House controversy.
(3) The public interest in encouraging frank communications within the public body or between public bodies clearly outweighs the public interest in disclosure. Plaintiffs specific need for the letter, apparently to “shed light on the reasons why a highly respected public official resigned in the wake of EMU being caught misleading the public as to the true cost of the President’s house”, or the public’s general interest in disclosure, is outweighed by Defendant’s interest in maintaining the quality of its deliberative and decision-making process.
(4) Defendant conducted an investigation and recently published a “voluminous and exhaustive report” concerning its findings regarding the University House project, a copy of which was furnished to Plaintiff.
The Court of Appeals affirmed in a split decision. 265 Mich App 185; 693 NW2d 850 (2005). This Court granted plaintiffs application for leave to appeal. 472 Mich 928 (2005).
*486 II. STANDARDS OF REVIEW
Summary disposition was granted to defendant on the basis of the FOIA. This Court reviews the grant or denial of summary disposition de novo. Herald Co v Bay City, 463 Mich 111, 117; 614 NW2d 873 (2000). Similarly, the proper interpretation of a statutory provision is a question of law that this Court reviews de novo. Id. Application of FOIA exemptions involving legal determinations are also reviewed under a de novo standard of review. Federated Publications, Inc v City of Lansing, 467 Mich 98, 106; 649 NW2d 383 (2002). Exemptions involving discretionary determinations, such as an exemption requiring a court to engage in a balancing of public interests, are reviewed under the clearly erroneous standard of review. Id. at 107.
“A finding is ‘clearly erroneous’ if, after reviewing the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been made.” Id. (citation omitted). As stated by the United States Supreme Court, this is the foremost of the general principles governing the clearly erroneous standard. Anderson v City of Bessemer City, 470 US 564, 573; 105 S Ct 1504; 84 L Ed 2d 518 (1985). The Supreme Court further explained that as long as a trial court’s “account of the evidence is plausible in light of the record viewed in its entirety, the [reviewing court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Id. at 574 (emphasis added). “Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be clearly erroneous.” Id. This standard, however, does not suggest that the mere fact that a court has viewed the evidence in a particular manner necessarily amounts to a permissible view of the evidence. Rather, “[d]ocu *487 merits or objective evidence may contradict [a] witness’ story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable fact-finder would not credit it.” Id. at 575. Where such factors are present, a court may indeed find clear error. The majority claims that the clear error standard of review was “inadvertently misstated” in Federated Publications, supra, but I fail to see how this is so. The Federated Publications majority opinion was written by Justice Markman and signed by six members of this Court, including all justices in the majority in this case. The standard of review was not just mindlessly inserted into Federated Publications-, a discussion of the standard of review spanned three pages.
Yet even more important is that the standard of review as articulated in Federated Publications is correct. The majority now states “that the clear error standard of review is appropriate in FOIA cases where a party challenges the underlying facts that support the trial court’s decision.” Ante at 472. “However, where the parties do not dispute the underlying facts but rather challenge the trial court’s exercise of discretion,” the proper standard of review is abuse of discretion. Id. at 467. In this case, the majority asserts that the parties do not dispute the underlying facts, they only dispute the import of those facts as they factor into the weighted balancing test of the frank communication exemption. Ante at 467. Therefore, the majority asserts the proper standard of review is abuse of discretion.
But the majority ignores the obvious reason why clear error is the proper standard of review when a court is analyzing FOIA exemptions requiring a determination of a discretionary nature. Simply, the party challenging the exemption has never seen the document *488 being sought.[2] It will often be impossible for a party seeking a document to dispute the underlying facts when those facts are only to be found in the document that the party cannot see. Plainly put, plaintiff needs to see the document to challenge underlying facts, but plaintiff cannot see the document because defendant is claiming it is exempt. The majority now holds that because plaintiff has not challenged the underlying facts, a higher standard of review applies. Not only does this nonsensical argument ignore the reality of proceedings dealing with FOIA exemptions, it also ignores the reality in this case because plaintiff did challenge an underlying fact.
Plaintiff challenges the claim that the letter is not relevant in light of the “exhaustive” public report defendant issued. Plaintiff argues that all the facts in the Doyle letter are not contained in the public report, contrary to the trial court’s opinion.[3] But, of course, plaintiff is limited in its arguments by the fact that plaintiff has never seen the letter. Further, plaintiff cannot further challenge any other underlying facts because defendant has offered no evidence to support its position. Defendant’s position, reiterated by the trial court, is based on nothing more than generalized assumptions about what is in the public’s interest. Because defendant never came forward with any factual evidence to support its position, there were no other facts for plaintiff to challenge. In essence, defendant has not met its burden under the statute, yet plaintiff is *489 being penalized with a more deferential standard of review for defendant’s failing. However, even using the abuse of discretion standard adopted by the majority to evaluate this case, the trial court still abused its discretion because the trial court’s decision was certainly not a reasonable and principled outcome when defendant presented no evidence to support its position, contrary to the clear language of the statute.
III. ANALYSIS
This case involves an issue of statutory interpretation. The primary goal of statutory interpretation is to give effect to the intent of the Legislature. In re MCI Telecom Complaint, 460 Mich 396, 411; 596 NW2d 164 (1999). The first step is to review the language of the statute. Id. If the statutory language is unambiguous, the Legislature is presumed to have intended the meaning expressed in the statute and judicial construction is not permissible. Id.
The FOIA starts from a basic premise — the disclosure of public documents is the cornerstone of responsible government. The FOIA provides, “It is the public policy of this state that all persons ... are entitled to full and complete information regarding the affairs of government and the official acts of those who represent them as public officials and public employees, consistent with this act.” MCL 15.231(2) (emphasis added). The FOIA also recognizes that the public has a strong interest in ensuring that it receives information to make sure that those individuals in government who are entrusted with the operation of public institutions do so in a responsible manner. To this end, the FOIA provides, “The people shall be informed so that they may fully participate in the democratic process.” Id. This Court has consistently held that the FOIA is *490 intended primarily as a prodisclosure statute. Swickard v Wayne Co Medical Examiner, 438 Mich 536, 544; 475 NW2d 304 (1991); see also State Employees Ass’n v Dep’t of Mgt & Budget, 428 Mich 104, 109; 404 NW2d 606 (1987); Booth Newspapers, Inc v Univ of Michigan Bd of Regents, 444 Mich 211, 231-232; 507 NW2d 422 (1993).
Accordingly, under the FOIA, unless expressly exempt, a public body must disclose a public record if provided with a written request that sufficiently describes the record. MCL 15.233(1). A person has a right to inspect, copy, or receive a copy of the requested record. Id. If a public body denies access to a public record, the public body has the burden to prove that its denial comports with the law. MCL 15.240(4).
In this case, defendant is the governing body of a Michigan public university and is a public body as defined by the FOIA. See MCL 15.232(d). Plaintiff provided defendant with a specific written request for the Doyle letter, and defendant denied this request claiming that the letter was exempt under MCL 15.243(l)(m) as a “frank communication.”
MCL 15.243(1)(m) states, in relevant part, that a public body may exempt from disclosure the following:
Communications and notes within a public body or between public bodies of an advisory nature to the extent that they cover other than purely factual materials and are preliminary to a final agency determination of policy or action. This exemption does not apply unless the public body shows that in the particular instance the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosure. [Emphasis added.]
*491 In assessing whether a public record can be withheld under the “frank communication” exemption, a court must determine whether a public body has met its burden of showing that the requested public record is of an advisory nature and contains other than purely factual materials that are preliminary to a final agency determination of policy or action. If so, the court must next determine whether “in the particular instance,” the public interest in encouraging frank communication between officials and employees of public bodies “clearly outweighs” the public interest in disclosing the record.
If a court determines that the document should not be disclosed because the public body has met its burden of showing that in the particular instance the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosure, see MCL 15.243(l)(m), then the court must next determine if fact can be separated from opinion in the document. If so, then the document must be redacted and factual information disclosed. MCL 15.244.[4]
*492 The Legislature has plainly set forth that the provision is weighted toward disclosure. Indeed, the “frank communication” exemption states that the exemption does not apply unless the public body shows that the public interest in not disclosing the record clearly outweighs disclosure in the particular instance. Notably, the “frank communication” exemption is the only FOIA provision that uses the term “clearly outweighs.” Other provisions merely use the term “outweighs” when providing for a balancing test. See, e.g., MCL 15.243(l)(c), (k), (n), (s), and (y).
In this case, the letter at issue is a communication of an advisory nature within a public body. It covers materials other than purely factual materials because it contains facts and the vice president’s opinions, and the letter, when written, was preliminary to a final agency determination about the house controversy. The trial court used this set of facts as one of its reasons to support the decision to grant summary disposition to defendant. The trial court stated that nondisclosure was favored because the letter was preliminary to a final determination of policy or action, the communication was between officials of public bodies, and the letter concerned defendant’s investigation and ultimate determination of what action, if any, would be taken regarding the university housing controversy. However, this “finding” does not favor disclosure or nondisclosure. It is merely a recitation of the circumstances that must initially be met for a document to fall within the “frank communication” exemption. Even when all the above circumstances are met, the public body must still show that in that particular instance, the public interest in encouraging frank communication between officials and employees of public bodies clearly outweighs the public interest in disclosure. See MCL 15.243(l)(m).
*493 Not only does the majority neglect the fact that defendant has offered nothing but mere platitudes to support its position, it uses these platitudes in an attempt to bolster its analysis. The majority states, “Disclosure of Doyle’s letter would foster a fear among university officials that they could no longer communicate candidly about a sensitive topic without their written communications being disclosed to the public. This would create a chilling effect that would surely dry up future frank communications.” Ante at 480. Yet defendant offered no evidence that this was or would be the case. There is no evidence of any chilling effect or any future chilling effect. There is certainly no evidence of any fear among university officials. The majority assumes that people will not speak candidly if their opinions will be made public, but such a blanket assertion is not relevant under the statute as it was written by our Legislature. While the majority may believe that secrecy is critical to good government, this belief has no bearing when interpreting the language selected by the Legislature.
Based on the facts of the case, defendant has not met its burden to prove that the public interest in nondisclosure to encourage frank communication in this particular instance clearly outweighs the public interest in disclosure, and the trial court abused its discretion when it held otherwise.[5] Defendant merely offers general arguments about how a public body needs candid input to maintain the quality of its decision-making process. However, defendant has offered no convincing argument about why in this “particular instance” the *494 public interest in nondisclosure to encourage frank communication clearly outweighs the public interest in disclosure. Rather, defendant has presented generic arguments that could be applicable to almost any case, and the trial court and the majority have accepted these generalizations without question. But the Legislature did not seek to create a blanket exemption for frank communications. The Legislature only created an exemption when the public interest in nondisclosure to encourage frank communication clearly outweighs the public interest in disclosure in “the particular instance” at issue.
This Court examined the phrase “in the particular instance” as it relates to the FOIA law enforcement exemption, MCL 15.243(l)(s), and a request for records relating to various subjects in Federated Publications, supra at 110. We stated that the word “particular” means “ ‘pertaining to a single or specific person, thing, group ... not general,’ ” and “instance” “means ‘a case or occurrence of something.’ ” Id., quoting Random House Webster’s College Dictionary (2001). We noted that “a FOIA request may be general and entail a request for records relating to varied subjects, arguably impheating several different aspects of the public interest.” Id. at 111. When a request is made for records relating to varied subjects, a “court may be required to conduct a ‘particular instance’ categorization of records to enable it to identify and weigh similar aspects of the public interest in favor of disclosure or nondisclosure.” Id. However, “[i]n some cases, it may be clear that the FOIA request is comprised of a sufficiently precise or narrow category of records that the circuit court can adequately balance the public interests at stake without the need of further ‘particular instance’ categorization.” Id. at 110.
In this case, the request was not for records related to varied subjects, but for documents related to the vice *495 president’s resignation and expenditures for the president’s home. This request was sufficiently narrow so the court could adequately balance the public interests at stake without further categorization.[6] However, the general discussion in Federated Publications is still helpful. The meaning of “the particular instance” in both the law enforcement exemption and the “frank communication” exemption requires an examination of the arguments relating to the specific case at hand. The “frank communication” exemption requires a public body to make specific arguments about the public interest in the particular instance at issue. It is not sufficient for a public body to simply make general statements about what is in the public interest.
The majority’s acceptance of the generalized arguments proffered by defendant results in the “frank communication” exemption being effectively eliminated. See, e.g., Evening News Ass’n v City of Troy, 417 Mich 481, 492; 339 NW2d 421 (1983) (“We hold that a ‘generic determination’ does not satisfy the FOIA.”). It *496 should go without saying that in many, if not most, cases, a public body may prefer that public records that express criticism or cast the public body in a negative light be withheld to avoid embarrassment. However, the purpose of the FOIA is not to provide a shield to public bodies. The purpose of the FOIA is to ensure that our citizens fully participate in the democratic process. MCL 15.231(2). Knowledge, not secrecy, is fundamental to ensuring that this purpose is fulfilled.
In this case, defendant is a public body, and there was much criticism and concern about the high cost of the president’s new residence. The public’s interest in who approved the costs associated with the house and how expenditures were authorized is certainly an important matter. It is not merely a matter of “morbid public curiosity,” as expressed by one amicus curiae. The letter at issue was written by the vice president of finance at the university. The letter provides information about how expenditures were authorized and reviewed, as well as the president’s level of involvement in the expenditures. The vice president’s insights are undoubtedly relevant to the possible misuse of tuition, fundraising, and taxpayer dollars. The public has an interest in learning if those who have been charged with administering a public university are doing so properly and responsibly.
The fact that defendant had released a report on the matter was not a sufficient reason to find that the public interest favored nondisclosure, contrary to the trial court’s holding. Defendant’s investigation and release of a report does not lessen the public interest in disclosing a letter written by the vice president of finance. As the vice president of finance, Doyle was in a unique position to comment on how funds were spent, who was involved, and what exactly happened. The fact *497 that defendant may have fulfilled its role by investigating and reporting on the matter does not lessen the public’s interest in learning what occurred before the matter was investigated and reported. In other words, the public has a genuine interest in learning how the misuse happened in the first place and if the misuse was the result of faulty procedures or oversight. The vice president is particularly qualified to discuss the situation and the concerns about the expenditures that go to the core of governmental accountability. This is not a private matter, but a public one.
As it specifically relates to Vice President Doyle, he had already decided to retire when the letter was written, and defendant has presented no specific evidence explaining how keeping the letter undisclosed would encourage further communications. Notably, Doyle’s letter has a section labeled in bold “Why did I decide to retire?” The vice president then goes on to detail in the letter itself the reasons why he decided to retire. Contrary to the majority’s assertion, this fact is critical in examining whether the public interest in nondisclosure clearly outweighs the public interest in disclosure in this particular instance. In this particular instance, defendant has not provided specific evidence that disclosure of the letter would inhibit frank communication. The letter writer had decided to retire, and there is certainly no evidence that disclosing the letter would inhibit any future frank communications from him. Notably, there is also no evidence that disclosing the letter would inhibit anyone from offering additional insight. There is no indication that any employee was reluctant to share information because of a fear of retribution.
The majority has stated that Doyle’s retirement “does not allay the concern that every other member of *498 defendant’s administration may harbor if Doyle’s communications, and possibly theirs, are disclosed for public consumption.” Ante at 479. But defendant has not offered one instance where an employee expressed any concern about providing information or an opinion that would prohibit defendant from engaging in any type of decision-making process. Defendant has offered not one example of encountering any type of hindrance in investigating this matter — or any matter — because a person was afraid their communication would be made public. The majority is expressing a general concern that is not grounded in the facts of this case. The statute uses the phrase “in the particular instance,” yet the majority ignores that there has been no evidence offered of any hint of fear or hesitation in this particular instance.
Notably, there is also no indication that defendant was continuing its investigation and would need to seek additional information from other employees. In fact, in an attempt to show that the release of the letter is unnecessary, defendant argues that it released an “exhaustive” report on its findings. However, the release of this report indicates that defendant’s investigation into the housing matter was complete.
In an attempt to support its flawed analysis, the majority offers only generalizations. The majority states, “We doubt that officials within a public body would offer candid, written feedback, or that they would do so for very long, if that feedback would invariably find its way into the public sphere.” Ante at 478-479 (emphasis in original). The majority further asserts, “Disclosure of Doyle’s letter would foster a fear among university officials that they could no longer communicate candidly about a sensitive topic without their written communications being disclosed to the public. *499 This would create a chilling effect that would surely dry up future frank communications.” Ante at 480. But the majority’s general concerns are not grounded in any facts presented by defendant, and they are certainly not grounded in the statutory language. Defendant has offered no specific evidence that releasing the letter would have a chilling effect on an investigation that was essentially over nor has defendant presented any evidence of a chilling effect on future investigations. The majority’s incredible statement that they “do not hypothesize generally,” ante at 481, about the public interests is false. All that the majority relies on — as the trial court did as well — are generalizations about the public interest. Accordingly, the trial court’s finding that defendant’s interest in maintaining the quality of its deliberative and decision-making process outweighed the public interest in disclosure was an abuse of discretion because defendant offered only general arguments and no specific evidence explaining why disclosing the letter would inhibit its decision-making process. The trial court’s decision is not a reasonable and principled outcome because there is no evidence to support such a decision.
Vague and rote arguments about the chilling effect of disclosing the letter are insufficient to satisfy the Legislature’s clear mandate that a public body offer evidence pertinent to the particular instance at issue. See, e.g., Evening News Ass’n, supra at 501-503, 506-507 (Generic claims that revealing names would have a chilling effect on the investigation in that matter were entirely conclusory because no reasons were given.). The majority’s decision grants public bodies almost complete control over determining what is and what is not in the public interest. Abdicating this control to a public body is not consistent with the FOIA, which was enacted to ensure disclosure to prevent abuses in the *500 operation of government. See Swickard, supra at 543. The Legislature has mandated that our courts require more from our public bodies than merely deferring to broad arguments that are not grounded in fact. Mere platitudes are insufficient to meet the statutory requirements.
Because defendant has not met its burden to prove that, in this particular instance, the public interest in nondisclosure to encourage frank communication clearly outweighs the public interest in disclosure, I believe the entire requested document must be disclosed. Therefore, while fact can be separated from opinion in the letter, it is unnecessary to do so because I believe the whole letter must be released.[7]
IV CONCLUSION
Our citizens’ full participation in the democratic process requires openness and accountability. Today, the majority has ignored the language of the statute and embraced generalizations that are not supported in any manner by the evidence presented by defendant. The impact of such a decision is to effectively abolish the *501 “frank communication” exemption that was crafted by our Legislature. Because I believe that defendant has not met its burden of showing that the public interest in nondisclosure to encourage frank communication clearly outweighs the public interest in disclosure in this particular instance, I would reverse the judgment of the Court of Appeals and remand the matter to the circuit court for an expedited proceeding under MCL 15.240(5) to release the letter and award reasonable attorney fees, costs, and disbursements to plaintiff, in accord with MCL 15.240(6). I believe that the statutory language and lack of evidence presented by defendant support no other decision.
Weaver and Kelly, JJ., concurred with Cavanagh, J.

 As plaintiff stated, “Indeed, at oral argument the only person in the courtroom who will not have seen the Doyle letter will be undersigned counsel, who must rely upon the public Opinions of the reviewing courts to know anything about what is in the letter.” (Reply Brief of Plaintiff-Appellant, p 4.)

 This argument is supported by Chief Judge Whitbeck’s thorough dissent in the Court of Appeals. Herald, supra at 222.

 MCL 15.244 provides the following:
(1) If a public record contains material which is not exempt under section 13, as well as material which is exempt from disclosure under section 13, the public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination and copying.
(2) When designing a public record, a public body shall, to the extent practicable, facilitate a separation of exempt from nonexempt information. If the separation is readily apparent to a person requesting to inspect or receive copies of the form, the public body shall generally describe the material exempted unless that description would reveal the contents of the exempt information and thus defeat the purpose of the exemption.

 I note that plaintiff also argued that defendant did not meets its burden under the statute based on the facts of the case. I disagree with the majority that plaintiff advocated a “blanket exemption” for every frank communication that contains criticism of a public official or public body.

 The September 10, 2003, request was for the following:
1. Copies of all correspondence, including but not limited to letters, reports, memos and e-mails, to and from the following parties since Jan. 1, 2002, regarding the new University House on campus:
• Vice President for Business and Finance Patrick Doyle or other staff members of the Office of Business and Finance.
• The EMU Board of Regents.
• EMU President Samuel Kirkpatrick.
2. Copies of all correspondence, including but not limited to letters, reports, memos and e-mails, between Vice President for Business and Finance Patrick Doyle to and from the EMU Board of Regents, EMU President Samuel Kirkpatrick and/or the Office of Human Resources, regarding Doyle’s recent resignation and-or retirement.

 It is not relevant whether the letter contains more opinion than fact, as the trial court stated. The statute applies to communications and notes that cover “other than purely factual materials ... .” MCL 12.243(l)(m). The letter in this case covers other than purely factual material because it contains both fact and the vice president’s opinions; therefore, it is analyzed under the “frank communication” exemption. The statute does not provide different standards based on how much opinion is in the document as opposed to how much factual material is in the document. The statute merely refers to documents that “cover other than purely factual materials,” which this document does. Therefore, the trial court abused its discretion in using the fact that there was more opinion than fact in the letter as a basis to deny disclosure because the statute applies to all documents that contain “other than purely factual materials” and provides for no further categorization.