*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

YELLOW TAIL VENTURES, INC.,

    Plaintiff-Appellant/Cross-Appellee,

and

OAK FLINT, LLC, NATURE'S REMEDY OF
BERKLEY, LLC, and 123 VENTURES, LLC,

    Plaintiffs-Cross-Appellees,

v

CITY OF BERKLEY, BERKLEY CITY COUNCIL,
MATTHEW BAUMGARTEN, MATTHEW
KOEHN, ERIN SCHULTOW, and DANIEL HILL,

    Defendants-Appellees/Cross-
    Appellants,

and

ATTITUDE WELLNESS, LLC, doing business as
LUME CANNABIS COMPANY,

    Cross-Appellant.

FOR PUBLICATION
December 15, 2022
9:05 a.m.

No. 357654
Oakland Circuit Court
LC No. 2020-184751-CZ

FIRE FARM, LLC, and PURE ROOTS, LLC,

    Plaintiffs-Appellants/Cross-Appellees,

and

PURE LIFE BERKLEY, LLC, PURE LIFE
BERKLEY II, LLC, BERKLEY HERBAL
CENTER, LLC, and GS ASHLEY, LLC,

-1-

Plaintiffs/Cross-Appellees,

v

CITY OF BERKLEY, BERKLEY CITY COUNCIL,
MATTHEW BAUMGARTEN, MATTHEW
KOEHN, ERIN SCHULTOW, and DANIEL HILL,

      Defendants-Appellees/Cross-
      Appellants,

and

ATTITUDE WELLNESS, LLC, doing business as
LUME CANNABIS COMPANY,

      Cross-Appellant.

No.  357666
Oakland Circuit Court
LC No.  2020-184754-CZ

---

FIRE FARM, LLC, PURE LIFE BERKLEY, LLC,
PURE LIFE BERKLEY II, LLC, BERKLEY
HERBAL CENTER, LLC, GS ASHLEY, LLC, and
PURE ROOTS, LLC,

      Plaintiffs,

and

3895 EUCLID, LLC,

      Intervening Plaintiff-Appellant,

v

CITY OF BERKLEY, BERKLEY CITY COUNCIL,
MATTHEW BAUMGARTEN, MATTHEW
KOEHN, ERIN SCHULTOW, and DANIEL HILL,

      Defendants-Appellees.

No.  358242
Oakland Circuit Court
LC No.  2020-184754-CZ

---

Before:  HOOD, P.J., and SWARTZLE and REDFORD, JJ.

SWARTZLE, J.

-2-

By approving Proposition 18-1, Michigan voters did not enact Mr. F.A. Hayek's Spontaneous Order with respect to marijuana. Though the ballot summary was a mere 99 words and the actual proposal that voters approved (though nowhere found on the ballot) exceeded 6,500 words, both the ballot summary and the actual statutory language make clear that municipalities can ban or restrict marijuana licenses. If a municipality decides to permit but restrict the number of licenses, then that municipality can apply criteria that, among other things, (1) ensure that a licensee is best suited to comply with the law within that particular municipality, (2) regulate the time, place, and manner of operation of the marijuana establishment, and (3) do not impose unreasonably impracticable conditions on the licensee.

In these consolidated appeals, rejected licensees raise several constitutional and statutory challenges to the City of Berkley's licensing criteria. As explained, the primary statutory challenges are without merit, and we decline to address the remaining challenges in the first instance. Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. BACKGROUND

Our Constitution permits the people of Michigan to bypass our Governor and Legislature and enact a statute by the citizen-driven initiative process. Const 1963, art 2, § 9. A statute enacted by initiative has the same force and effect as one passed the traditional way, with the exception that the initiated statute is not subject to gubernatorial veto and any amendment requires 3/4 votes of both chambers of the Legislature. *Id.*

For decades, it has been unlawful to manufacture, sell, or possess marijuana, under both federal and state criminal law. In November 2018, Michigan voters approved Proposition 18-1 by a vote of 2,356,422 to 1,859,675. As a result of this approval, it is now lawful to manufacture, sell, and possess marijuana under Michigan law, though it remains unlawful to engage in any of these activities under federal law.

Proposition 18-1 became the Michigan Regulation and Taxation of Marihuana Act ("MRTMA"), MCL 333.27951 *et seq*. (Note: The MRTMA uses the "marihuana" spelling; when we are not quoting the act, we use the more familiar "marijuana" spelling.) Section 2 of the act sets out the people's "purpose and intent" with respect to the MRTMA. These include the need "to control the commercial production and distribution of marihuana under a system that licenses, regulates, and taxes the businesses involved" and to "ensure security of marihuana establishments." MCL 333.27952. The people directed that, "[t]o the fullest extent possible, this act shall be interpreted in accordance with the purpose and intent set forth in this section." *Id.*

Specifically with respect to the local regulation of marijuana, the MRTMA prohibits anyone from selling marijuana to the general public without first obtaining a local license. A municipality can "completely prohibit or limit the number" of marijuana establishments—including the number of retailers—that can operate within its boundaries. See MCL 333.27956(1). If a municipality permits marijuana establishments to operate within its geographical borders, then that municipality can adopt ordinances that, among other things, impose "reasonable restrictions on public signs" and "regulate the time, place, and manner of operation" of such establishments, so long as those ordinances "are not unreasonably impracticable" and do not conflict with the

MRTMA or rules promulgated under the act. MCL 333.27956(2). And, if a municipality elects to limit the number of marijuana establishments, then that municipality must select its licensees "among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with this act within the municipality." MCL 333.27959(4).

In December 2019, the City adopted an ordinance to license and regulate marijuana establishments. Berkley Code, § 30-802 *et seq.* With respect to the number of licenses, the City limited the number to three. Each application had to be accompanied by a fee and include certain information. The completed application would initially be referred to the City's community development director, and it would be reviewed by the City's community development department, treasurer, and department of public safety. After passing through these preliminary reviews, applications would then be examined by the City manager using "a point-based system" in which the following 16 criteria would be considered:

(1) The content and sufficiency of the information contained in the application.

(2) Whether the proposed plan has received approval from the public safety department, community development department, and all other appropriate departments.

(3) Whether the proposed facility will revitalize or redevelop property that has been vacant or unused for an extended period of time.

(4) Planned outreach on behalf of the proposed business, and whether the applicant or its stakeholders have made, or plan to make, significant physical improvements to the building housing the marihuana business, including plans to control traffic, noise, and odor effects on the surrounding area.

(5) Whether the applicant or any of its stakeholders have a record of acts detrimental to the public health, security, safety, morals, good order, or general welfare prior to the date of the application; and whether the applicant or any of its stakeholders have ever been convicted of operating an illegal business enterprise of any kind.

(6) Whether the applicant has reasonably and tangibly demonstrated it possesses adequate resources and experience to implement the submitted business plan.

(7) Whether the proposed location in the city in relation to its proximity to other locations for marihuana businesses represents a reasonable and harmonious dispersion of marihuana businesses.

(8) The proximity of the business to a school.

(9) Whether adequate off street parking is provided or available.

(10) Whether the size and nature of the use in relationship to previously approved and issued marihuana business licenses is reasonable.

(11) Whether the applicant has business experience previously in the city and demonstrates that the applicant has sufficient business experience to operate the proposed marihuana business.

(12) Whether the proposed plan incorporates sustainable infrastructure and energy efficient elements and fixtures.

(13) Whether the proposed plan incorporates infrastructure that adequately addresses stormwater drainage.

(14) Whether the proposed plan incorporates odor control systems to prevent odor dispersion to neighboring properties.

(15) Whether an applicant has applied for a co-location of equivalent licenses at one location.

(16) Other criteria as indicated important for consideration by any appropriate department of the city administration. [Berkley Code, § 30-806(c).]

This point-based system could "include additional criteria intended to select licensees that provide the best outcome for the community as determined by the city." *Id.* § 30-806(e). Based on this review, the City manager would make recommendations first for site plan approval to the planning commission and then to the City council for its consideration in a public meeting.

In performing this review, the City received more applicants than the number of available licenses. As a result, the City rejected several of the applicants, including plaintiffs in these consolidated cases. These unsuccessful applicants sued the City and several City officials and staff. Plaintiffs alleged that the City's criteria violated the MRTMA because they allowed the City to score applications based on factors that were not relevant to the operation of a marijuana establishment. Plaintiffs also alleged that the scoring of the applications by the City manager violated the OMA because it was not done in a public forum. There were additional claims raised for a writ of mandamus, superintending control, and violations of procedural and substantive due process.

Multiple parties attempted to intervene, either as plaintiffs whose applications were also denied or as defendants whose applications were approved. The trial court granted several parties the ability to intervene as plaintiffs with claims similar to the claims alleged, but the trial court notably denied intervening parties as defendants whose applications were approved. Relevant to this appeal, the trial court denied Attitude Wellness, LLC's motion to intervene as a defendant to protect its prospective license.

Defendants moved for summary disposition and raised several grounds for relief under MCR 2.116. After oral argument, the trial court concluded that plaintiffs failed to state a claim for relief under the MRTMA and granted summary disposition under MCR 2.116(C)(8).

The trial court concluded, however, that the City's scoring process violated the OMA. The trial court found that the City ordinance made "the City Manager responsible for scoring the applications based on the scoring criteria," and that the City manager enlisted "subordinates to assist him with the task of scoring the applications." Based on the record, the trial court found that there was, in effect, a "Scoring Committee" composed of the public policy assistant, the director of public safety, the City manager, and the community development director. The trial court considered this "Scoring Committee" akin to the one that our Supreme Court concluded was used by the Regents of the University of Michigan to skirt certain OMA requirements. *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211; 507 NW2d 422 (1993). The trial court noted that "there [was] no evidence that the Scoring Committee held any public meetings to discuss the application review and scoring process," and therefore, "the scoring process did violate the Open Meetings Act."

Plaintiffs then moved for attorney fees under MCL 15.271(4) because they prevailed on their OMA claim, but the trial court denied that motion after it concluded that plaintiffs had not commenced the civil action to compel the City's compliance or enjoin the City's further noncompliance with the OMA. Instead, the trial court found that plaintiffs were seeking to enjoin defendants from issuing licenses to applicants other than plaintiffs.

With respect to the myriad of other claims, the trial court determined that it did not need to address them because its finding that the City violated the OMA sufficiently resolved those other issues.

Plaintiffs appealed the trial court's order regarding its ruling that the City's ordinance did not violate the MRTMA, and defendants cross-appealed regarding the trial court's order that the City had violated the OMA. Attitude cross-appealed the trial court's denial of intervenor status.

## II. ANALYSIS

"We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020) (citations omitted). "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a claim by the pleadings alone." *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998) (citation omitted).

## A. THE MICHIGAN REGULATION AND TAXATION OF MARIJUANA ACT

Plaintiffs argue that the City's ordinance conflicts with the MRTMA or is otherwise restricted by the MRTMA so that it cannot include certain scoring criteria. Statutory interpretation is a question of law which this Court reviews de novo. *Sherman*, 332 Mich App at 632. Whether enacted by our Legislature in the normal course or the people directly via the initiative process, Const 1963, art 2, § 9; *League of Women Voters of Mich v Secretary of State*, 339 Mich App 257, 279; ___ NW2d ___, (2021), this Court must give effect to "the plain, ordinary, or generally accepted meaning" of the statute's terms, *D'Agostini Land Co, LLC v Dep't of Treasury*, 322 Mich App 545, 554; 912 NW2d 593 (2018) (cleaned up). "A statutory provision is ambiguous only if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning." *People v Fawaz*, 299 Mich App 55, 63; 829 NW2d 259 (2012) (cleaned up).

"Only when ambiguity exists does the Court turn to common canons of construction for aid in construing a statute's meaning." *D'Agostini*, 322 Mich App at 554-555 (cleaned up).

First, plaintiffs argue that the City ordinance does not comply with MCL 333.27959(4), which provides:

> If a municipality limits the number of marihuana establishments that may be licensed in the municipality pursuant to section 6 of this act and that limit prevents the department from issuing a state license to all applicants who meet the requirements of subsection 3 of this section, the municipality shall decide among competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with this act within the municipality.

Plaintiffs argue that this provision prohibits the City from adopting scoring criteria focused on community concerns, such as green infrastructure, sustainability, aesthetics, and economic goals. The City's scoring criteria have no relation to whether an applicant is suited to operate a marijuana establishment in compliance with the MRTMA because the competitive process must select applicants that are "best suited to operate *in compliance with this act*." (Emphasis added.) Thus, for example, whether an establishment has solar panels has nothing to do with compliance with the act, according to plaintiffs.

But plaintiffs read the MRTMA too narrowly. They would have this Court stop short in its reading of MCL 333.27959(4) and omit the following emphasized phrase: ". . . best suited to operate in compliance with this act *within the municipality*." (Emphasis added.) The statute could have been drafted to omit this qualifying language, and the provision would have made grammatical sense. But, the statute was not written that alternative way, and the statute does include the qualifier "*within the municipality*." We read this qualifier as permitting a municipality to craft criteria suited to its own local concerns, provided that the criteria conform to the other provisions of the MRTMA.

Against this reading, plaintiffs suggest that this Court treat the phrase "within the municipality" as nugatory. This we will not do. It is a long-standing principle of statutory construction that a court must avoid a "construction that would render any part of the statute surplusage or nugatory." *West St Joseph Prop, LLC v Delta Twp*, 338 Mich App 522, 535; 980 NW2d 727 (2021). The plain and ordinary reading of MCL 333.27959(4) authorizes a municipality to adopt a competitive process to select applicants that are best suited to operate within the municipality. This includes concerns specific to that community, including green infrastructure, sustainability, aesthetics, and economic goals.

Plaintiffs next argue that MCL 333.27956 cabins a municipality's authority to impose local regulations on a marijuana establishment. As a general proposition, this is true; but as applied, the City's ordinance does not stray outside the cabin. To see this, consider subsections (2) and (3) of MCL 333.27956, specifically the following emphasized language:

> 2. A municipality may adopt other ordinances that are *not unreasonably impracticable* and *do not conflict* with this act or with any rule promulgated pursuant to this act and that:

(a) establish reasonable restrictions on public signs related to marihuana establishments;

(b) *regulate the time, place, and manner* of operation of marihuana establishments and of the production, manufacture, sale, or display of marihuana accessories;

(c) authorize the sale of marihuana for consumption in designated areas that are not accessible to persons under 21 years of age, or at special events in limited areas and for a limited time; and

(d) designate a violation of the ordinance and provide for a penalty for that violation by a marihuana establishment, provided that such violation is a civil infraction and such penalty is a civil fine of not more than $500.

3. A municipality may adopt an ordinance requiring a marihuana establishment with a physical location within the municipality to obtain a municipal license, but may not impose qualifications for licensure that conflict with this act or rules promulgated by the department.

These provisions of the MRTMA do not prohibit or restrict a municipality from considering the scoring criteria that plaintiffs complain are improper. Instead, the provisions expressly permit a municipality to adopt an ordinance so long as it (1) is not unreasonably impracticable, (2) does not directly conflict with the MRTMA or promulgated rules, and (3) regulates the time, place, and manner of operation of a marijuana establishment. *Id*.

The criteria used by a municipality to evaluate an application can certainly reflect and anticipate whether that proposed licensee will be willing and able to conform to the local "time, place, and manner" regulations enacted by that municipality. And, so long as those regulations do not impose unreasonably impracticable requirements or conflict with the MRTMA or promulgated rules, then the use of criteria that reflect those local concerns is permissible.

Here, there is nothing in the record to suggest that the criteria of which plaintiffs complain are unreasonably impracticable or conflict with any provision of the MRTMA or a promulgated rule. Rather, the criteria fit neatly within a reasonable understanding of the MRTMA's "time, place, and manner" provision. Accordingly, the trial court did not err when it granted summary disposition to defendants on this issue.

B. OPEN MEETINGS ACT

Although the trial court did not find fault with the City under the MRTMA, it did conclude that the City violated the OMA. The trial court held that the City employed an impermissible "Scoring Committee" similar to the one found objectionable in our Supreme Court's opinion in *Booth*.

The trial court erred. The City ordinance did not create a "Scoring Committee"; rather, the City's ordinance provided that the City manager would review the applications before sending them to the planning commission, which would then send them to the City council for ultimate

approval. Even though the City manager was aided by other officials and staff, there was no delegation of decision-making duties to these persons. The trial court's reference to *Booth* was misplaced, and this case is more similar to our Supreme Court's decision in *Herald Co v City of Bay City*, 463 Mich 111, 134-135; 614 NW2d 873 (2000), in which our Supreme Court explained the distinguishing feature of *Booth*:

> The important distinguishing feature of *Booth* was that the board was clearly a "public body" that was subject to the OMA, and the various regents and subquorum groups had no independent authority to narrow the field, make a recommendation, or select a president. The board effectively sought to delegate its authority as a body subject to the OMA to various bodies of its own creation that it believed were not subject to the OMA, for the express purpose of avoiding the requirements of the OMA.
>
> Thus, the decision in *Booth* precluded an attempt by a public body to evade the OMA (and thus circumvent legislative intent) by delegating its authority. In this case, the city manager was assigned the task of recommending a new fire chief directly by the city charter, and, therefore, he required no delegation of authority from the city commission in order to perform that function. Under these circumstances, the Legislature, by electing not to include individuals in the definition of public body in the OMA, has exempted the city manager from its requirements.

There was no impermissible delegation of authority to the City manager because the ordinance itself authorized the City manager to review the applications before sending them to the City council. Berkley Code, § 30-806(f)-(h). The City ordinance's procedure that dictated that the City manager would review applications did not involve the work of a "public body" for the purposes of the OMA because, as recognized in *Herald*, an individual person is not included in the definition of a public body for the purposes of the OMA. See MCL 15.262(a). Thus, the process by which the City manager scored the applications was not required to be conducted in a public hearing even though the manager enlisted the help of other City employees to accomplish the task. The ultimate decision on which applications were approved was made by the City council, all in accordance with the OMA.

This reading is consistent with this Court's recent holding in *Pinebrook Warren, LLC v City of Warren*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket Nos. 355989, 355994, 355995, 356005, 356011, 356017, 356023, 359269, & 359285), slip op at 18-23, in which the Court held that the use of a review committee to evaluate applications for medical-marijuana licenses was not subject to the OMA because the ordinance at issue merely allowed for an advisory board to assist the City council.

We reverse the trial court's decision that defendants violated the OMA.

## C. PLAINTIFFS' REMAINING CLAIMS

Collectively, plaintiffs have also alleged various claims of substantive and procedural due process, declaratory relief, and injunctive relief. Additionally, plaintiffs in Docket No. 357654

moved for a writ of mandamus as well as for the trial court to impose superintending control over the City. The trial court has not yet addressed these issues. "Generally, an issue is not properly preserved if it is not raised before, addressed by, or decided by the lower court or administrative tribunal." *General Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). We decline to address these issues on appeal, and instead remand them to the trial court for proceedings consistent with this opinion.

## D. ATTORNEY FEES

Defendants argue in their cross-appeal that the trial court properly declined to award plaintiffs their attorney fees in relation to their OMA claim. The only plaintiff to raise this issue on appeal was Yellow Tail Ventures, Inc., but its appeal was dismissed by stipulation. No other plaintiff has challenged the denial of attorney fees. Therefore, this issue is abandoned, and we decline to address it.

## E. INTERVENTION

Lastly, Attitude cross appeals the trial court's denial of its motion to intervene. We review a trial court's decision on a motion to intervene for an abuse of discretion. *Kuhlgert v Mich State Univ*, 328 Mich App 357, 377; 937 NW2d 716 (2019). Attitude alleged that it had an interest in intervening to protect its preliminary license and proprietary information from being disclosed. The trial court denied Attitude's motion because it found that defendants were already adequately suited to protect Attitude's interests, Attitude did not have a claim or defense in common with plaintiffs' allegations, and the substance of the allegations concerned the City's actions, not those of Attitude.

MCR 2.209(B) governs the right of parties to intervene permissively in a case, and it states:

(B) Permissive Intervention. On timely application a person may intervene in an action

(1) when a Michigan statute or court rule confers a conditional right to intervene; or

(2) when an applicant's claim or defense and the main action have a question of law or fact in common.

In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Even though Attitude's interests are legitimate, it is not evident that these interests were a subject of the litigation between the current parties. Moreover, even if the trial court agreed that defendants violated the OMA or that the City's ordinance was preempted by the MRTMA, there were no facts to conclude that Attitude's license would ultimately be revoked after a proper rescoring. Furthermore, plaintiffs' claims did not invite a fact-based comparison of the various applicants, or the applicants who received the three highest scores, and, thus, Attitude was unable to demonstrate that its proprietary information was at risk of being disclosed. The trial court did not abuse its discretion in denying Attitude's motion to intervene because it is not outside the range

-10-

of principled outcomes that plaintiffs' claims did not involve a question of law or fact relating to Attitude's interests.

## III. CONCLUSION

The trial court did not err when it determined that the City's ordinance did not conflict with the MRTMA because that act expressly allows municipalities to enact ordinances regulating the number of marijuana businesses, and the criteria enacted by the City conform with the MRTMA. The trial court did, however, err when it determined that the City had violated the OMA by not holding the City manager's scoring process open to the public, because the City ordinance provided the City manager with the authority to review the applications before making recommendations to the City council.

The trial court did not err when it denied Attitude's motion to intervene because plaintiffs' claims did not concern Attitude's interests.

The trial court's order denying plaintiffs' attorney fees was abandoned when the only plaintiff to raise the issue was dismissed from these appeals.

Lastly, we decline to address plaintiffs' other claims because the trial court did not rule on them. Instead, those matters are remanded to the trial court for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Noah P. Hood
/s/ James Robert Redford

-11-