*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ERIC HAKEEM DEONTAYE MAYS, Personal
Representative of the ESTATE OF ERIC
BRADFORD MAYS, TONYA BURNS, JOHN
BILLINGS, JR., BEVERLY BIGGS-LEAVY,
TERRENCE LEAVY, VICTOR JONES,
LAVONZELLA JONES, SHERRY RENEE
DICKERSON, and CYNTHIA BLANKS,

FOR PUBLICATION
July 09, 2025
10:30 AM

Plaintiffs-Appellants,

v

No. 368773
Genesee Circuit Court

MAYOR SHELDON NEELEY and CITY OF
FLINT,

LC No. 23-119292-NZ

Defendants-Appellees.

Before: O'BRIEN, P.J., and YOUNG and KOROBKIN, JJ.

PER CURIAM.

Plaintiffs brought this declaratory judgment action challenging the city of Flint's creation of an advisory committee to advise the city on funding allotments under the American Rescue Plan Act of 2021 (ARPA), PL 117-2, § 9901; 135 Stat 223, which plaintiffs allege was formed in violation of the city charter and allowed to operate without public oversight in violation of the Open Meetings Act (OMA), MCL 15.261 *et seq*. Plaintiffs appeal by right the trial court's order granting summary disposition to defendants under MCR 2.116(C)(8) (failure to state a claim on which relief can be granted). We agree with the trial court's dismissal of plaintiffs' OMA claim, but we disagree with the trial court's conclusion that plaintiffs failed to state a claim for a violation of the city charter. We therefore affirm in part, reverse in part, and remand.

## I. BACKGROUND AND FACTS

Under Section 9901 of the ARPA, the Federal Coronavirus Local Fiscal Recovery Fund (CLFRF) was established to provide "substantial funding to local governments by either federal direct payments to Metropolitan Cities and Counties or state payments to Non-Entitlement Units

of Local Government" in an effort to mitigate the consequences of the COVID-19 pandemic.[1] The federal government awarded the city of Flint $94,726,664 from the CLFRF, with disbursements received in May 2021 and May 2022, to "address public health and economic impacts of the COVID-19 public health emergency, respond to workers performing essential work during the COVID-19 public health emergency, provide government services to the extent of the reduction in revenue due to the COVID-19 public health emergency, and to make necessary investments in infrastructure." On October 24, 2022, the city council approved a "Resolution Adopting ARPA Allocation Plan," which, as relevant here, provided that of the unallocated ARPA funds, $18.16 million would be allocated to community grants. The resolution tasked city officials with plan implementation, "including identifying and submitting specific grantees or expenditures for Council approval, in accordance with the requirements of City, State, and Federal law."

On December 6, 2022, the city announced the formation of the ARPA Community Advisory Committee ("ARPA committee"), inviting its residents to submit applications to serve as committee members. The city's announcement stated that the ARPA committee would "help evaluate ARPA community grant proposals and make award recommendations related to the $18 million available for community grants as part of [the city's] overall allocation of [ARPA] funding," and that "[t]he committee's recommendations will be reviewed by the Mayor and Flint City Council, who will make the final decision on funding awards."

On March 9, 2023, the city published the names of the twelve city residents appointed to the ARPA committee on its website, stating, "[t]he committee members were chosen through a blind selection process using a scoring rubric to evaluate their applications," and that the ARPA committee "is intended to give residents a voice in the grantmaking process, ensuring that funds are awarded in a way that builds a stronger, more equitable economy as Flint recovers from the pandemic." The city reiterated that the recommendations issued by the ARPA committee were subject to review by Mayor Sheldon Neeley and the city council, who would retain final authority regarding funding decisions.

In July 2023, plaintiffs, adult residents of the city who included city councilmembers Eric Bradford Mays[2] and Tonya Burns, filed a complaint for declaratory judgment under MCR 2.605 against defendants, Mayor Neeley and the city of Flint. The complaint alleged that Mayor Neeley "unilaterally created" the ARPA committee without seeking the enactment of an ordinance or the passage of a resolution, that Mayor Neeley failed to seek the approval of the city council concerning the appointment of individual members of the ARPA committee, and that the ARPA committee was meeting in closed session. As a result, plaintiffs lamented that "the residents of Flint have expressly been denied a voice in the grantmaking process by Mayor Neeley himself."

---

[1] Michigan Department of Treasury, *American Rescue Plan Act (ARPA)*: *Coronavirus Local Fiscal Recovery Fund* <https://www.michigan.gov/treasury/local/share/arpa/american-rescue-plan-act-arpa-coronavirus-local-fiscal-recovery-fund> (accessed July 2, 2025).

[2] Mays died during the pendency of this appeal, and a personal representative of his estate was substituted as a plaintiff. See *Mays v Flint*, unpublished order of the Court of Appeals, entered May 8, 2024 (Docket No. 368773).

Plaintiffs framed their pleading as a two-count complaint. Under Count I, plaintiffs sought a declaratory judgment that the formation of the ARPA committee violated the Flint Charter's requirements for "multiple member bodies" (MMBs), which include the requirements that they be established by ordinance or resolution and that appointments to such bodies be approved by city council. Under Count II, plaintiffs sought a declaratory judgment that defendants were violating the OMA by allowing the ARPA committee to meet in closed session.

In lieu of an answer, defendants moved for summary disposition under MCR 2.116(C)(8), contending that plaintiffs failed to state a claim on which relief could be granted because, in essence, the ARPA committee was not an MMB as defined under the city charter and because the ARPA committee was not a "public body" within the meaning of the OMA.[3]

Following a motion hearing, the trial court concluded that defendants were entitled to summary disposition, agreeing with them that the ARPA committee was not an MMB under the city charter and was not a public body under the OMA. The trial court accordingly entered an order granting defendants' motion, and this appeal ensued.

## II. STANDARDS OF REVIEW

"Questions of statutory interpretation, construction, and application are reviewed de novo." *Johnson v Johnson*, 329 Mich App 110, 118; 940 NW2d 807 (2019). Likewise, "[a] trial court's interpretation of a municipal charter is a question of law we review de novo." *Save Our Downtown v Traverse City*, 343 Mich App 523, 533; 997 NW2d 498 (2022). "De novo review means that we review the legal issue independently, without required deference to the courts below." *Twp of Hopkins v State Boundary Comm*, 340 Mich App 669, 683; 988 NW2d 1 (2022) (quotation marks and citation omitted).

A trial court's decision regarding a motion for summary disposition is further reviewed de novo. *Pueblo v Haas*, 511 Mich 345, 354; 999 NW2d 433 (2023). A motion made under MCR 2.116(C)(8) "tests whether the complaint states a claim as a matter of law." *Feyz v Mercy Memorial Hosp*, 475 Mich 663; 719 NW2d 1 (2006). Such a motion "must be decided on the pleadings alone" taking all factual allegations as true, and the motion "may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 154, 159-160; 934 NW2d 665 (2019).

## III. ANALYSIS

### A. THE CITY CHARTER

Plaintiffs argue that the trial court erred in concluding that the ARPA committee was not an MMB under the city charter. We agree.

---

[3] Defendants also requested sanctions as a penalty for filing frivolous claims. The trial court rejected defendants' contention that such relief was warranted and it is not at issue on appeal.

In the present case, we are presented with multiple provisions of the city charter. Article 1 of the city charter is titled "In General," and includes a section titled "Definitions." Within that section, the charter states: " 'Multiple member body' means any board, commission, ad hoc committee, advisory committee and any group however designated, composed of more than one person, and acting, or purporting to act, in the exercise of official duties. The City Council is not a multiple member body." Flint Charter, § 1-405. Separately, article 6 of the city charter is titled "Multiple Member Bodies," and includes a section also titled "Multiple Member Bodies." That section provides, in pertinent part:

> A. Multiple member bodies, including boards, commissions, and committees may be established by the City of Flint by ordinance or resolution. Such bodies may exercise those powers and duties granted by the City of Flint, provided that they do not conflict with provisions of this Charter or State law.

> B. Multiple member bodies, including boards and commissions established in this Charter or created after the effective date of this Charter, shall be subject to the following provisions, unless otherwise stated in this Charter:

> \* \* \*

> 3. Appointments shall be made by the Mayor with the approval of the City Council. . . .

> 8. Every multiple member body shall comply with the [OMA], as amended, and file its draft minutes with the City Clerk within eight (8) business days, as required by State law. These draft minutes shall be available for public inspection and on the City of Flint's website. Once the draft minutes are approved, they shall be filed with the Clerk's Office within five (5) business days and posted on the City's website. [Flint Charter, § 6-101.]

Within the same article of the city charter, a subsequent section is titled "Meetings," and states:

> All meetings of multiple member bodies of the City of Flint, including boards and commissions, called for the purpose of discussing business within the jurisdiction of the body, and all gatherings of a quorum or more members of the body at which business within the jurisdiction of the body is discussed, shall be public unless otherwise authorized by law. Public notice shall be given in the manner provided by statute for meetings of public bodies. Every multiple member body shall comply with State law including the [OMA], as amended. [Flint Charter, § 6-104.]

We interpret home rule city charters under the same rules that we apply to the construction of statutes. *Barrow v Detroit Election Comm*, 301 Mich App 404; 836 NW2d 498 (2013). That is,

> [t]he provisions are to be read in context, with the plain and ordinary meaning given to every word. Judicial construction is not permitted when the language is clear

-4-

and unambiguous. Courts apply unambiguous statutes as written. Nothing may be read into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. [*Save Our Downtown*, 343 Mich App at 534 (quotation marks and citations omitted).]

Plaintiffs contend, and we agree, that the ARPA committee meets the definition of an MMB as it is an "advisory committee . . . composed of more than one person, and acting, or purporting to act, in the exercise of official duties." Flint Charter, § 1-405. The committee satisfies the definition of "any . . . advisory committee," *id.*, as it is explicitly named the "American Rescue Plan Act Community *Advisory Committee*" (emphasis added) and according to city publications, was created to provide advice to the city by evaluating ARPA community grant proposals and making recommendations related to the $18 million available for community grants as part of the city's allocation of ARPA funding. Further, the committee is composed of more than one person, as it is made up of twelve Flint residents. See *id.*

The trickier question is whether the committee was "acting, or purporting to act, in the exercise of official duties." *Id.* In rejecting the characterization of the ARPA committee as an MMB, the trial court reasoned that because the committee is advisory in nature and only makes recommendations, it was not "entrusted or authorized to make any exercise of official duties." Although it is true that the city expressed on its website that "[t]he committee's recommendations will be reviewed by the Mayor and Flint City Council, who will make the final decision on funding awards," the absence of final approval authority is not determinative because under the plain language of the charter, "any . . . advisory committee" may be considered an MMB.

When engaging in statutory interpretation of a city charter, we are to discern the "plain and ordinary meaning" of the charter provision when read in context. *Save Our Downtown*, 343 Mich App at 534. We conclude that under a plain reading of the charter, and accepting the allegations in plaintiffs' complaint as true and construing them in a light most favorable to plaintiffs, "acting or purporting to act in the exercise of official duties" encompasses the actions with which the committee was charged. Plaintiffs allege that the mayor formed the committee and tasked it with providing recommendations as to the distribution of ARPA community grant funding to the mayor and city council. Such distribution of federal funding is an official duty of local government. Indeed, the city charter and state law empower the mayor to present budget proposals and amendments to the city council, and the council to pass the budget and budgetary amendments to distribute unallocated ARPA funds. Flint Charter §§ 7-101(A), 7-105(A)-(B); MCL 141.438(1). And the city council passed a "Resolution Adopting ARPA Allocation Plan" which explicitly tasked city officials with its implementation, including allocating millions of dollars in community grants. Taking the allegations of the complaint as true, Mayor Neeley formed the committee to play an official role in the exercise of a city function, i.e., the allocation of grants.

The ARPA committee also had all of the trappings of an official, city-sanctioned endeavor. This was not an off-the-books operation; rather, the city publicly invited Flint residents to submit applications to serve on the committee through its official government website, and then publicly introduced the committee members to the community on that same website three months later, explaining that it would "give residents a voice in the grantmaking process, ensuring that funds are awarded in a way that builds a stronger, more equitable economy as Flint recovers from the pandemic." Further, the city announced that it would provide staff support to the committee, and

the committee members—"including at least one representative from each ward"—were designated to serve terms of six months or less and receive a stipend.

Accepting the facts as alleged in plaintiffs' complaint as true and construing them in a light most favorable to plaintiffs, we struggle to see how it can be said that the ARPA committee was not "acting or purporting to act in the exercise of official duties" when it was authorized by the mayor to assist the city with carrying out funding decisions for government grants. Indeed, we venture to guess that any committee member, vetted and appointed by the city, would be surprised to find that they were not acting in the exercise of official duties while participating in the ARPA grantmaking process. At the very least, plaintiffs have sufficiently alleged that the ARPA committee *purported* to carry out official duties at the city's direction, which is enough to satisfy the definition of an MMB under Flint Charter, § 1-405.

Defendants argue that because the ARPA committee was created without the enactment of an ordinance or the passage of a resolution as provided under Flint Charter, § 6-101(A), it is not an MMB. We are not persuaded. In our view, defendants' argument conflates the *definition* of an MMB, which is provided in Flint Charter, § 1-405, with the legal obligations that must be complied with in forming and operating groups meeting that definition, which are provided in Flint Charter, §§ 6-101 and 6-104. Flint Charter, § 6-101(A) states that MMBs "*may* be established by the City of Flint by ordinance or resolution." (Emphasis added.) Under Michigan jurisprudence, the term "may" is generally interpreted as permissive, indicating discretion rather than obligation. See *James Twp v Rice*, 509 Mich 363, 372; 984 NW2d 71 (2022). "But this does not end the inquiry because it is necessary to ascertain to whom the statute gives that discretion." *Id*. "As a general rule, the word 'may' will not be treated as a word of command unless there is something in the context or subject matter of the act to indicate that it was used in such a sense." *Old Kent Bank v Kal Kustom, Enterprises*, 255 Mich App 524, 532; 660 NW2d 384 (2003) (quotation marks and citation omitted). In the context of this sentence and this charter provision, "may" is more reasonably read as giving the city council discretion to establish MMBs by *either* ordinance or resolution but mandating that any such bodies be instituted through one of these two means.

However, it does not follow, as defendants argue, that an entity is not an MMB merely because it was not established by ordinance or resolution. To the contrary, whether a group is an MMB is controlled by the definition of that term in Flint Charter, § 1-405. As discussed above, the ARPA committee meets that definition. A different provision, Flint Charter, § 6-101, sets out requirements that the city must follow in establishing and operating an MMB. Failure to comply with those requirements is not a backdoor means of redefining the group to exclude it from those requirements. We therefore agree with plaintiffs that the absence of an ordinance or resolution does not prevent us from classifying the ARPA committee as an MMB.

Having established that, on the facts alleged, the ARPA committee is an MMB, we further agree with plaintiffs that, on the basis of the factual allegations in their complaint, the ARPA committee's formation and operation appears to violate the city charter. As stated, it was not established by ordinance or resolution as required by Flint Charter, § 6-101(A). Nor were appointments to the committee approved by city council as required by Flint Charter, § 6-101(B)(3). Accordingly, plaintiffs have stated a claim for violations of the Flint city charter, and

the trial court's order granting summary disposition to defendants as to Count I of plaintiffs' complaint must be reversed.[4]

## B.  THE OMA

Plaintiffs also argue that because the trial court erred in concluding that the ARPA committee was not an MMB, it erred in dismissing their claim that defendants violated the OMA. On this claim, we disagree.

As with our review of a city charter, we apply standard rules of statutory construction in reviewing the meaning and application of a statute such as the OMA. *Davis v Detroit Fin Review Team*, 296 Mich App 568, 584-585; 821 NW2d 896 (2012). "The Legislature is presumed to have intended the meaning it has plainly expressed, and clear statutory language must be enforced as written." *Id.* (quotation marks and citation omitted).

The OMA requires that "meetings," "decisions," and "deliberations" of a "public body" be open to the public.  MCL 15.263(1) to (3).  The threshold inquiry under the OMA is whether an entity is a "public body."  Stated differently, to be subject to the OMA's requirements, an entity must fit the definition of a "public body."  *Id.*  The OMA pertinently defines "public body" as

> any state or local legislative or governing body, including a board, commission, committee, subcommittee, authority, or council, that is empowered by state constitution, statute, charter, ordinance, resolution, or rule to exercise governmental or proprietary authority or perform a governmental or proprietary function . . . . [MCL 15.262(a).]

Regarding whether an entity is a public body under the OMA, our Supreme Court has explained:

> The definition of "public body" in the OMA contains two requirements: First, the entity at issue must be a "state or local legislative or governing body, including a board, commission, committee, subcommittee, authority, or council."  Second, the entity must be "empowered . . . to exercise governmental or proprietary authority or perform a governmental or proprietary function," and that power must derive from "state constitution, statute, charter, ordinance, resolution, or rule . . . ." [*Herald Co v Bay City*, 463 Mich 111, 129; 614 NW2d 873 (2000).]

Additionally, the Supreme Court "has articulated two pathways to determine whether a governmental entity is a 'public body.' Either (1) the entity satisfies the statutory definition of 'public body' in its own right or (2) the entity is delegated authority from another public body." *Pinebrook Warren*, *LLC v City of Warren*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket

---

[4] We express no view as to what remedy, if any, would be warranted should plaintiffs ultimately prevail on Count I.  See MCR 2.605.  We hold only that the trial court erred by granting summary disposition as to that count under MCR 2.116(C)(8).

-7-

Nos. 164869, 164870, 164871, 164872, 164873, 164874, 164875, 164876, and 164877); slip op at 22.

In our case, plaintiffs argue that the ARPA committee is a public body because it is an MMB under the city charter, and because all MMBs are subject to the OMA, they are also public bodies. Although as discussed above we agree that the ARPA committee is an MMB, Flint Charter, § 1-405, and the charter says that MMBs must comply with the OMA, Flint Charter, §§ 6-101(8), 6-104, it does not necessarily follow that the committee is a public body under state law such that plaintiffs have stated a standalone claim that defendants violated the OMA as set forth under Count II of their complaint.[5] Instead, the entity must either (1) satisfy the statutory definition of "public body" or (2) be delegated authority from another public body. *Pinebrook*, ___ Mich at ___; slip op at 22. As we will explain, the ARPA committee satisfies neither requirement.

We first consider whether the ARPA committee meets the definition of "public body" in its own right, either as a legislative or governing body. In *Davis*, this Court examined whether a financial review team appointed by the Governor under the former emergency financial manager act, MCL 141.1501 *et seq*., was a public body subject to the OMA. *Davis*, 296 Mich App at 574, 590-591. We rejected the argument that the financial review team was a "legislative body" because it lacked "the power to make or enact law, to bring something into or out of existence by making law, or to attempt to bring about or control by legislation." *Id*. at 593. Here, the ARPA committee was tasked only with evaluating grant proposals and making award recommendations for ARPA community grants. Plaintiffs have not alleged or provided authority to indicate that the ARPA committee maintains the power to legislate, to create or abolish through law, or to try to influence or govern through legislative processes.

Nor is the ARPA committee a "governing body." See *id*. at 593-600. In *Davis*, this Court defined a governing body as a body that regulates or governs a political subdivision, that is self-regulating and independent, and that formulates decisions through which it effectuates or shapes public policy for a political subdivision. *Id*. Because the financial review team at issue in that case only made recommendations, and was not authorized to act on recommendations so as to directly effectuate or shape public policy, we concluded that it was not a governing body under the OMA. See *id*. at 608. The same is true here. The ARPA committee does not exert independent authority; rather, its members merely provide recommendations to the governing body, which maintains ultimate decision-making authority. See *id*. at 604, 608. The decision-making authority required to be a governing body does not include the mere act of issuing a recommendation. See *id*. at 600.

That leads us to the second possible pathway to "public body" status—delegation—which directs us to elevate substance over form when a body has not been bestowed governing authority by law, but effectively exercises that authority by delegation from a public body. See *Pinebrook*,

---

[5] As indicated above, it appears that the city charter independently obligates MMBs to meet in public pursuant to public notice. See Flint Charter, § 6-104. Count II of plaintiffs' complaint, however, seeks a declaratory judgment for a violation of the OMA, not a violation of the city charter.

___ Mich at ___; slip op at 29. To do so, "we must examine both the language of the enabling action" as well as "the actions actually taken by the . . . entity." *Id.* at ___; slip op at 29.

Our Supreme Court recently determined in *Pinebrook* that a review committee responsible for examining medical marijuana dispensary applications constituted a public body under the OMA because, although the applicable ordinance only authorized the committee to make recommendations, "in reality, the Review Committee ranked applications and effectively decided which applicants would receive licenses—the city council did not do that work." *Id*. at ___; slip op at 35. There, "the city council both created the Review Committee and provided the Review Committee its authority to perform acts on behalf of the city council," and the "ordinance empowered the Review Committee to perform work that was integral to the licensing selection process review committee." *Id*. at ___; slip op at 31, 33.

Here, plaintiffs make no comparable allegations. The ARPA committee would be a public body by delegation only if it was effectively delegated authority held by a governing body that was itself a public body subject to the OMA, MCL 15.262(a). See *id.* at ___; slip op at 29. Plaintiffs do not allege that the Flint city council, which is a public body, delegated governing authority to the ARPA committee; to the contrary, the gravamen of plaintiffs' complaint is that Mayor Neeley bypassed the city council's authority by creating the ARPA committee unilaterally and appointing its members without city council approval. As for whether Mayor Neeley delegated governing authority to the ARPA committee, plaintiffs make no argument that Mayor Neeley himself was a public body under the OMA. See *Herald Co v Bay City*, 463 Mich 111, 129-130; 614 NW2d 873 (2000) (holding that an individual is not a public body under the OMA). Absent any such argument, there is no indication that any public body delegated governing authority to the ARPA committee as would be required under a *Pinebook* delegation theory.

Under the city charter at issue here, the mayor is responsible for presenting proposals for the budget, including amendments, to the city council, which is tasked with passing the budget. Flint Charter §§ 7-101(A), 7-105(B); MCL 141.438(1). The city council is authorized to allocate unbudgeted funds for disbursement, such as the ARPA-related funds at issue, by passing a budgetary amendment. See Flint Charter, § 7-105(A). The ARPA committee was purportedly established by Mayor Neeley to make recommendations regarding the allocation of community grant funding, but the recommendations of the entity were subject to review by both Mayor Neeley and the city council, "who will make the final decision on funding awards."

To reiterate, the review committee in *Pinebrook* served as the "de facto selector" of grant applications because the city council simply approved the most highly ranked applicants without independently considering the merits of their applications. *Pinebrook*, ___ Mich at ___; slip op at 29-30; see also *Exclusive Capital Partners, LLC v Royal Oak*, ___ Mich at ___, ___; ___ NW3d ___ (2024) (Docket Nos. 366247, 366257), slip op at 23 (holding that the city manager acted as a public body under a delegation theory because in practice, the city commission simply adopted the city manager's recommendation as to who would receive recreational marijuana licenses "without apparent deliberation"). Here, plaintiffs have not alleged that Mayor Neeley or the city council simply adopted the work of the ARPA committee, or that the ARPA committee displaced the city council's authority to allocate the ARPA funds. See *Pinebrook*, ___ Mich at ___; slip op at 29.

Accordingly, we agree with the trial court that the ARPA committee is not a public body by virtue of a delegation from a public body.

In sum, we conclude that plaintiffs failed to state a claim that the operation of the ARPA committee violated the OMA, given that the committee's recommendations remained subject to review by Mayor Neeley and the city council such that the committee cannot be considered a public body. Consequently, the trial court did not err when it granted defendants' motion for summary disposition as to Count II of plaintiffs' complaint.

## IV. CONCLUSION

Because we agree with plaintiffs that the ARPA committee is a multiple member body under Flint Charter, § 1-405, plaintiffs have stated a claim that the formation of that committee violated Flint Charter, § 6-101 and the trial court erred by granting summary disposition to defendants on Count I. Conversely, because we agree with defendants that the ARPA committee is not a public body under the OMA, the trial court was correct to grant summary disposition on Count II. We therefore affirm in part, reverse in part, and remand for further proceedings. We do not retain jurisdiction.

/s/ Colleen O'Brien
/s/ Adrienne N. Young
/s/ Daniel S. Korobkin